The Honorable Brian D. Lynch
Chapter 11
Ex Parte

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| In re:<br><br>SHILO INN, BEND, LLC, *et. al.,*[1]<br><br>    Debtors and Debtors-in-Possession.<br><br>---<br><br>☒  Affects All Debtors<br><br>☐ Affects SHILO INN, BEND, LLC<br>☐ Affects SHILO INN, WARRENTON, LLC | Lead Case No. 21-41340-BDL<br><br>(Jointly Administered with Case No. 21-41341-BDL)<br><br>**EX PARTE EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO USE CASH COLLATERAL ON AN INTERIM BASIS AND SETTING A FINAL HEARING; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**DECLARATIONS OF LARRY CHANK AND MARK S. HEMSTREET IN SUPPORT FILED SEPARATELY AND CONCURRENTLY** |

## SUMMARY

Pursuant to Rules 4001-3 and 9013-1 of the Local Bankruptcy Rules of the United States

Bankruptcy Court for the Western District of Washington (the "Local Rules"), 11 U.S.C. § 363(c),

and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

Shilo Inn, Bend, LLC ("Shilo Bend") and Shilo Inn, Warrenton, LLC ("Shilo Warrenton") (each

---

[1] The Debtors are Shilo Inn, Bend, LLC, Bankruptcy Case No. 21-41340-BDL and Shilo Inn, Warrenton, LLC, Bankruptcy Case No. 21-41341-BDL. The cases are jointly administered.

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 1
103715353.1 0070625-00002

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

a "Debtor" and, collectively, the "Debtors") the debtors and debtors in possession in the above-captioned, jointly-administered chapter 11 bankruptcy cases, hereby move, on an *ex parte* emergency basis (the "Motion"), for entry of an order (i) authorizing the Debtors to use cash collateral on an emergency interim basis pending a final hearing in accordance with the Debtors' operating budgets (the "Budgets"), copies of which are attached as **Exhibit "1"** to the declaration of Larry Chank (the "Declaration") submitted concurrently herewith, and (ii) setting a final hearing on the Motion. The relief requested in this Motion is based on this Motion, the memorandum of points and authorities annexed to the Motion, the Declaration, and the separately and concurrently filed declaration of Mark S. Hemstreet.

The proposed order, a true and correct copy of which is attached as **Exhibit "2"** to the Declaration and this Motion, is an agreed form of order reached between the Debtors and the primary secured creditors RSS WFCM2015NXS4-OR SIB, LLC and RSS WFCM2016NXS5-OR SIW, LLC.

Each of the two Debtors owns a hotel (each a "Hotel" and, collectively, the "Hotels"), as described in greater detail below. The Hotels are collateral for certain promissory notes (each a "Loan" and, collectively, the "Loans") originally made in November 2015 and now held by RSS WFCM2015NXS4-OR SIB, LLC (as to the Loan to Shilo Bend), and RSS WFCM2016NXS5-OR SIW, LLC (as to the loan to Shilo Warrenton) (each a "Lender" and, collectively, the "Lender"), and serviced by Rialto Capital Advisors, LLC ("Rialto"). The Lender is the primary, senior secured lender in each of the Debtors' two cases, and, in each instance, the Lender has a secured lien on the respective Hotel and an interest in each's respective cash collateral.

For several months, the Debtors have been in negotiations with Lender attempting to refinance while the Lender postponed pending foreclosure sales against the Hotels. The Lender was unwilling to postpone foreclosure sales scheduled for August 16, 2021, and consequently, on August 13, 2021, the Debtors determined in their reasonable business judgment that it would be best to file for chapter 11 bankruptcy protection for the benefit of all creditors, to save the jobs of

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 2
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 2 of 46

the 44 employees who work at the Hotels, and to save the equity in the Hotels through a reorganization of their financial affairs in bankruptcy court.

Shilo Bend's primary asset is the Bend Hotel. Based on the appraisal report of an MAI certified appraisal in 2015 when the Loan was originated, the Bend Hotel had a fair market value of $13,500,000, and Mark Hemstreet opines that the value is now at least between $15,000,000 and $20,000,000. For purposes of cash collateral use, the Debtors have used a value of $18,000,000. The Lender has a secured claim against the Bend Hotel for approximately $8,702,323. Accordingly, the Lender is protected by a $9,297,677 equity cushion, which calculates to an equity cushion percentage of 106.84%. Prepetition, Shilo Bend received an Economic Injury Disaster Loan ("EIDL") from the Small Business Administration ("SBA"), secured by a lien on all of Shilo Bend's personal property, and the SBA has a secured claim of $146,900. Accordingly, the SBA is protected by a $9,150,777 equity cushion, which calculates to an equity cushion percentage of 6,229.26%. The Debtors understand that Rialto may disagree with these figures.

Shilo Warrenton's primary asset is the Warrenton Hotel. Based on the appraisal report of an MAI certified appraisal in 2015 when the Loan was originated, the Warrenton Hotel had a fair market value of $6,500,000, and Mark Hemstreet opines that the value is now at least between $7,000,000 and $8,000,000. For purposes of cash collateral use, the Debtors have used a value of $7,500,000. The Lender has a secured claim against the Warrenton Hotel for approximately $4,330,740. Accordingly, the Lender is protected by a $3,169,260 equity cushion, which calculates to an equity cushion percentage of 73.18%. Prepetition, Shilo Warrenton received an EIDL from the SBA, secured by a lien on all of Shilo Warrenton's personal property, and the SBA has a secured claim of $90,500. Accordingly, the SBA is protected by a $3,078,760 equity cushion, which calculates to an equity cushion percentage of 3,401.94%. The Debtors understand that Rialto may disagree with these figures.

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 3
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 3 of 46

1  The Debtors seek Court authority to use cash collateral in order to pay the expenses of
2  maintaining and operating their businesses, as set forth in the Budgets, copies of which are attached
3  as **Exhibit 1** to the Declaration.  The Budgets reflect the Debtors' ordinary and necessary operating
4  expenses that must be paid to preserve their businesses.  While the Budgets represent the Debtors'
5  best estimates of such expenses, the needs of the businesses may fluctuate.  Thus, the Debtors seek
6  an allowed variance not to exceed ten percent (10%) of each line item, provided, however, that the
7  Debtors may make expenditures up to ten percent (10%) in excess of the total budgeted expenses
8  for that month in the Budget so long as actual disbursements do not exceed one hundred and ten
9  percent (110%) of the budgeted total expenses for such month of the Budget (collectively, the
10  "Allowed Variance").  To the extent that the Debtors' use of funds is lower than provided for in
11  the budget on a given week during any period therein, the unused portion made be rolled over to
12  the next weekly time period in the budget.  The Debtors are not seeking to use cash collateral
13  across estates.  Each of the Debtors has its own Budget and will use its own cash collateral therein.

14  The Debtors believe that the current valuation of the Hotels on a going-concern basis and
15  the continued operations of the Hotels provide adequate protection to the Lender and the other
16  secured creditors.  If the Debtors are not permitted to use cash collateral to maintain and operate
17  the Hotels, it is a virtual certainty that their estates will be liquidated.  Specifically, without use of
18  cash collateral and the ability to operate, existing guests will not receive services and will depart,
19  canceling existing charges.  Moreover, without use of cash collateral, future reservations will also
20  be cancelled.  If the Debtors are not allowed to use cash collateral for even a limited period of
21  time, the public perception associated with the foregoing will certainly hurt, if not eviscerate, the
22  Debtors' businesses, thereby reducing the value of the estates and potential recovery to creditors.

23  The Debtors and Rialto have agreed to use of cash collateral on an interim basis through
24  September 30, 2021, in accordance with the proposed stipulated order, a true and correct copy of
25  which is attached as **Exhibit 2** hereto.  The Debtors' affiliates and Rialto have entered into similar
26  stipulated cash collateral orders that have been approved by the Court in the affiliates' chapter 11

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 4
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 4 of 46

cases that have been pending before this Court since 2020. The Debtors submit that the proposed interim stipulated order for cash collateral use should be approved.

## **ADDITIONAL INFORMATION**

This Motion is based upon Local Rules 4001-3 and 9013-1, 11 U.S.C. § 363(c), and Bankruptcy Rules 4001 and 9014, the supporting Memorandum of Points and Authorities annexed hereto, the Declaration and declaration of Mark S. Hemstreet filed separately in support of the Motion, and other admissible evidence properly brought before the Court. The Debtors submit that granting the Motion on an emergency *ex parte* basis is warranted given the critical need to fund active hotel operations.

Pursuant to Bankruptcy Rule 4001(b)(2), while the Court cannot conduct a final hearing on this Motion earlier than fourteen (14) days after service of this Motion, the Court may grant the *ex parte* motion before such fourteen-day period expires to enable the Debtors to use cash collateral as is necessary to avoid immediate and irreparable harm to the estates pending a final hearing. For the reasons noted herein and in the accompanying Memorandum of Points and Authorities, the Debtors must be able to pay expenses in accordance with the Budgets pending a final hearing in order to avoid immediate and irreparable harm to the Debtors' businesses and their bankruptcy estates.

As set forth in detail in the accompanying Memorandum of Points and Authorities, the proposed use of cash collateral does not include any of the provisions set forth in Bankruptcy Rule 4001(c)(1)(B)(i) – (xi), ***except as noted in the chart in the Motion and annexed certification by counsel***.

In order to provide maximum notice of this Motion, concurrently with the filing of this Motion with the Court, the Debtors served by overnight mail a copy of this Motion and all supportive papers upon the Office of the United States Trustee, the secured creditors, and the 20 largest unsecured creditors in each of the Debtors' cases.

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 5
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 5 of 46

1    **WHEREFORE,** the Debtors respectfully request that this Court enter an order:

2    (1)    affirming the adequacy of the Notice given herein;

3    (2)    granting the Motion on an interim basis pending a final hearing thereon;

4    (3)    entering the agreed order attached as **Exhibit 2** hereto, authorizing the Debtors to

5    use cash collateral to pay all of the expenses set forth in the Budgets attached as **Exhibit 1**;

6    (4)    setting a final hearing on the Motion; and

7    (5)    granting such other and further relief as the Court deems just and proper under the

8    circumstances.

9
     DATED:  August 18, 2021
10                                          LEVENE, NEALE, BENDER,
                                            YOO & BRILL L.L.P.
11

12                                          */s/ John-Patrick M. Fritz*
                                            David B. Golubchik (admitted pro hac vice)
13                                          John-Patrick M. Fritz (admitted pro hac vice)

14                                          Proposed Attorneys for Debtors and
                                            Debtors-in-Possession
15
                                            STOEL RIVES LLP
16

17                                          */s/ Bryan T. Glover*
                                            Bryan T. Glover, WSBA No. 51045
18

19                                          Proposed Attorneys for Debtors and
                                            Debtors-in-Possession

20

21

22

23

24

25

26

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 6
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 6 of 46

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

### A.     Procedural Background

1.     Shilo Inn, Bend, LLC ("Shilo Bend") and Shilo Inn, Warrenton, LLC ("Shilo Warrenton") (each a "Debtor" and, collectively, the "Debtors")[2] the debtors and debtors in possession in the above-captioned, jointly-administered chapter 11 bankruptcy cases, commenced their respective chapter 11 bankruptcy cases by each filing a voluntary petition under chapter 11 of title 11, sections 101 *et seq.* of the United States Code, (the "Bankruptcy Code") on August 13, 2021 (the "Petition Date").

2.     The Debtors continue to operate their businesses and manage their financial affairs as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.  No committee of unsecured creditors has been formed, and no trustee has been appointed.

3.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

### B.     The Two Hotels

4.     Mark S. Hemstreet has been the proud founder and owner of the Shilo Inn Suites Hotel chain since 1974.  Today, there are thirteen (13) company-owned Shilo Inn hotels across the western states, including one Shilo hotel in Killeen, Texas.

5.     Each of the two Debtors owns a hotel (each a "Hotel" and, collectively, the "Hotels"), as described in greater detail below.

6.     The Hotels are collateral for certain promissory notes (each a "Loan" and, collectively, the "Loans") originally made in November 2015 and now held by RSS

---

[2] The Debtors' case numbers are: Shilo Inn, Bend, LLC, Bankruptcy Case No. 21-41340, and Shilo Inn, Warrenton, LLC, Bankruptcy Case No. 21-41341.

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 7
103715353.1 0070625-00002

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

Case 21-41340-BDL     Doc 21     Filed 08/18/21     Ent. 08/18/21 18:03:50     Pg. 7 of 46

1   WFCM2015NXS4-OR SIB, LLC (as to the Loan to Shilo Bend), and RSS WFCM2016NXS5-

2   OR SIW, LLC (as to the Loan to Shilo Warrenton), (each a "Lender" and, collectively, the

3   "Lender") and serviced by Rialto Capital Advisors, LLC ("Rialto").

4          7.      Shilo Bend operates a 151-room/suite, two-story, full-service hotel in Bend,

5   Oregon (the "Bend Hotel"), on fee title land, operated pursuant to a franchise agreement with

6   Shilo Franchise International ("SFI") and managed by Shilo Management Corporation ("SMC").

7   The Shilo Bend property has an outdoor pool and spa, indoor pool with sliding open-roof

8   membrane and two spas, and steam and sauna room, exercise fitness center, guest laundry, as well

9   as a free-standing restaurant and lounge and banquet facility, currently seeking a restaurant tenant.

10  The Bend Hotel has approximately 29 employees.   Based on the appraisal opinion of

11  Mark Hemstreet, the fair market value of the Bend Hotel is at least between $15,000,000 and

12  $20,000,000.

13         8.      Shilo Warrenton operates a 63-all-suites, four-story hotel plus an independent free-

14  standing restaurant that is leased in Warrenton, Oregon (the "Warrenton Hotel"), on fee title land,

15  operated pursuant to a franchise agreement with SFI and managed by SMC. The Shilo Warrenton

16  property has an indoor pool, spa, steam and sauna room, fitness and business center, and meeting

17  room.  The Warrenton Hotel has approximately 15 employees.  Based on the appraisal opinion of

18  Mark Hemstreet, the fair market value of the Warrenton Hotel is at least between $7,000,000 and

19  $8,000,000.

20         9.      The Hotels have enjoyed historical success as stand-alone businesses leading up

21  to 2020.  Despite these challenges, the Debtors continued to maintain the properties in first-class,

22  excellent condition and in compliance with Shilo Inn franchise standards.  Unfortunately, in 2020

23  the Hotels experienced a sudden and sharp decline in hotel revenues due to the Covid-19 global

24  pandemic and unprecedented global recession.  Despite the availability of a vaccine, uncertainty

25  with the Covid-19 delta variant has continued to suppress travel demand in the hotel and

26  hospitality sector.

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 8
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 8 of 46

**C.     The Hotels Secured by Loans with the Lender**

10.     On or about November 2, 2015, each of the Debtors entered into loan agreements with Natixis Real Estate Capital, LLC ("Natixis").   On information and belief, Natixis collateralized the Loans into commercial mortgage backed securities and sold them as investments in the market.   The Loans were being serviced by Wells Fargo prior to being moved to special servicing with Rialto in or about November 2018.   Mark S. Hemstreet, founder of Shilo Inns, is a personal guarantor on the Loans.

11.     The Debtors made timely payments on the Loans for three years until the third quarter of 2018.   Despite what might appear to have been a better economy on Wall Street with record Dow Jones stock averages, the general American economy continued to be a struggle for America's working class, which continues to have reverberations in the markets serving America's working class families.   Shilo Inn has a long and proud 47-year-plus history of providing high quality resort, hotel, and vacation services to American families in the Pacific Northwest, and several western states, including Washington, Oregon, Idaho, Montana, Arizona, Nevada, and Texas.   Shilo Inn has been a strong supporter and charitable donor to the service men and women of the United States Armed Forces, and Shilo is proud of its commitment to America's men and women in uniform and America's working class.   As America's working class continued to struggle through this economy, the Debtors nonetheless made timely debt service to the Lender for three years.   But when the economic conditions strained the ability to make payments in late 2018, the Lender took increasingly aggressive steps to foreclose on the Debtors' assets.

12.     For twelve months from approximately November 2018 to September 2019, the Debtors made numerous offers to the Lender and Rialto in efforts to bring current and reinstate the Loan through settlement.   In the approximately 30 months leading up to the bankruptcy filings, Rialto controlled most of the Debtors' operating cash accounts under a lockbox cash management provision, making it very challenging for SMC and SFI to operate the hotels. Rialto collected all of the operating cash that Shilo created and insisted that the Debtors' affiliates, SFI, SMC, and

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 9
103715353.1 0070625-00002

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 9 of 46

1  Mr. Hemstreet personally pay for all of the expenses, including, but not limited to, labor, payroll,

2  utilities, insurance, vendors, supplies, and taxes at the Hotels rather than use the Debtors' own

3  generated operating cash and reserves to pay their own expenses. The Debtors were required to

4  submit monthly operating expense draw requests at the end of each month and then have to wait

5  at least another 45 days to ever receive reimbursement, resulting in SMC, SFI and Mr. Hemstreet

6  having to advance and fund millions of dollars to the Hotels and causing more financial hardship

7  on the Debtors, affiliates, SMC, SFI, and Mr. Hemstreet. During this period in 2019, the Debtors

8  also learned that Rialto had used the lockbox funds to pay outstanding amounts due under the

9  Loans, informing the Debtors weeks after the fact.

10      13.     On January 23, 2020, the Debtors and Rialto, on behalf of Lender, each entered into

11  separate Forbearance Agreements wherein Rialto agreed to forbear from exercising its rights and

12  remedies until July 23, 2020. Upon execution of its Forbearance Agreement, Shilo Bend paid

13  Lender the amount of $508,704 to be applied to outstanding amounts due under the Shilo Bend

14  Loan. Upon execution of its Forbearance Agreement, Shilo Warrenton paid Lender the amount of

15  $243,531 to be applied to outstanding amounts due under the Shilo Warrenton Loan. In addition,

16  the Debtors brought current their past due monthly loan payments owed for November and

17  December 2019 and January 2020 in the total amount of $183,138.51 for the Shilo Bend Loan and

18  $90,306.90 for the Shilo Warrenton Loan. Thereafter, the Debtors were required to make the

19  regular principal and interest payments on the Loan. The Debtors were current on the payments

20  required under the Forbearance Agreement until the onset of the COVID-19 pandemic.

21      14.     The American economy in general and the hotel industry in particular have been

22  decimated as a result of the pandemic and the applicable state and local stay at home orders.

23  Specifically, the pandemic and applicable stay at home orders caused a sudden and dramatic loss

24  of revenues and occupancy at the Hotels just when the Hotels would normally experience

25  increasing revenues coming out of winter and going into spring break. As a result of the COVID-

26  19 pandemic and the immediate loss of revenue and occupancy as a result of the stay at home

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 10
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 10 of 46

orders, the Debtors unfortunately defaulted under the Forbearance Agreement. The Debtors are not unique among hotel owners and operators defaulting on loans and facing foreclosure as a result of the COVID-19 pandemic. A 2020 survey by the American Hotel and Lodging Association estimated that half of hotel owners in the country are in danger of foreclosure as a result of the pandemic. It is incumbent upon hospitality lenders to work with their borrowers during these unfortunate times.

15. While vaccines for COVID-19 are available for the general population, the United States has struggled to convince its population to accept the vaccine and reach a critical level of herd immunity. In the meantime, children under the age of 12 remain unable to receive the vaccine, and the highly contagious and more deadly COVID-19 delta variant is spreading rapidly across the country in what the national medical community has called a pandemic of the unvaccinated. The confluence of these terrible events has continued to suppress hotel and hospitality demand.

16. Rialto scheduled non-judicial foreclosure sales of the Hotels, which were continued and rescheduled from time to time, until August 16, 2021. In addition to the payments under the Forbearance Agreements as set forth above, since the termination of the Forbearance Agreements, the Shilo organization paid to Rialto additional and substantial sums to postpone the foreclosures sales while the parties attempted to reach a further out-of-court agreement on restructuring the debts. Additionally, SFI and SMC have forgone and not received franchise and management fees since at least September 2018 as part of Shilo's good faith effort to accomplish a successful restructuring.

17. Even when three of the Debtors' affiliates (Shilo Inn, Ocean Shores, LLC, Shilo Inn, Nampa Suites, LLC, and Shilo Inn, Idaho Falls, LLC) (collectively, the "2020 Shilo Debtors") were forced to file for chapter 11 bankruptcy protection in the Fall of 2020, the Debtors continued to make good faith refinancing and settlement proposals to Rialto based on the expressed interest of third-party refinancing lenders with global settlement/refinancing offers. Unfortunately, despite the Debtors sharing with Rialto the most recent names of pending new third-party refinancing

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 11
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 11 of 46

1  lenders and repeated requests to postpone foreclosure, Rialto would not agree to postpone the
2  foreclosure sales on the Debtors' Hotels.

3  18.    Faced with the foreclosure sales, the Debtors determined in their reasonable
4  business judgment that it would be best to file for chapter 11 bankruptcy protection for the benefit
5  of all creditors, to save the jobs of the 44 employees who work at the Hotels, and to save the equity
6  in the Hotels through a reorganization of their financial affairs in bankruptcy court.

7  **D.    The Debtors' Primary Assets and Secured Debts**

8  19.    Shilo Bend's primary asset is the Bend Hotel.  Based on the appraisal report of an
9  MAI certified appraisal in 2015 when the Loan was originated, the Bend Hotel had a fair market
10 value of $13,500,000, and Mark Hemstreet opines that the value is now at least between
11 $15,000,000 and $20,000,000.  For purposes of cash collateral use, the Debtors have used a value
12 of $18,000,000.  The Lender has a secured claim against the Bend Hotel for approximately
13 $8,702,323.  Accordingly, the Lender is protected by a $9,297,677 equity cushion, which
14 calculates to an equity cushion percentage of 106.84%.  Prepetition, Shilo Bend received an
15 Economic Injury Disaster Loan ("EIDL") from the Small Business Administration ("SBA"),
16 secured by a lien on all of Shilo Bend's personal property, and the SBA has a secured claim of
17 $146,900.  Accordingly, the SBA is protected by a $9,150,777 equity cushion, which calculates
18 to an equity cushion percentage of 6,229.26%.  The Debtors understand that Rialto may disagree
19 with these figures.

20 20.    Shilo Warrenton's primary asset is the Warrenton Hotel.  Based on the appraisal
21 report of an MAI certified appraisal in 2015 when the Loan was originated, the Warrenton Hotel
22 had a fair market value of $6,500,000, and Mark Hemstreet opines that the value is now at least
23 between $7,000,000 and $8,000,000.  For purposes of cash collateral use, the Debtors have used
24 a value of $7,500,000.  The Lender has a secured claim against the Warrenton Hotel for
25 approximately $4,330,740.  Accordingly, the Lender is protected by a $3,169,260 equity cushion,
26 which calculates to an equity cushion percentage of 73.18%.  Prepetition, Shilo Warrenton

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 12
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 12 of 46

1 received an EIDL from the SBA, secured by a lien on all of Shilo Warrenton's personal property,

2 and the SBA has a secured claim of $90,500. Accordingly, the SBA is protected by a $3,078,760

3 equity cushion, which calculates to an equity cushion percentage of 3,401.94%. The Debtors

4 understand that Rialto may disagree with these figures.

5 **E.  Need for Use of Cash Collateral**

6 21.  The Debtors seek Court authority to use cash collateral in order to pay the expenses

7 of maintaining and operating their businesses, as set forth in the Budgets, copies of which are

8 attached as **Exhibit 1** to the Declaration of Larry Chank in Support of this Motion (the

9 "Declaration"). The Budgets reflect the Debtors' ordinary and necessary operating expenses that

10 must be paid to preserve their businesses. While the Budgets represent the Debtors' best estimates

11 of such expenses, the needs of the businesses may fluctuate. Thus, the Debtors seek an allowed

12 variance not to exceed ten percent (10%) of each line item, provided, however, that the Debtors

13 may make expenditures up to ten percent (10%) in excess of the total budgeted expenses for that

14 month in the Budget so long as actual disbursements do not exceed one hundred and ten percent

15 (110%) of the budgeted total expenses for such month of the Budget (collectively, the "Allowed

16 Variance"). To the extent that the Debtors' use of funds is lower than provided for in the budget

17 on a given week during any period therein, the unused portion made be rolled over to the next

18 weekly time period in the budget. The Debtors are not seeking to use cash collateral across estates.

19 Each of the Debtors has its own Budget and will use its own cash collateral therein.

20 22.  The Debtors believe that the current valuation of the Hotels on a going-concern

21 basis and the continued operations of the Hotels provide adequate protection to the Lender and the

22 other secured creditors.

23 23.  If the Debtors are not permitted to use cash collateral to maintain and operate the

24 Hotels, it is a virtual certainty that their estates will be liquidated. Specifically, without use of cash

25 collateral and the ability to operate, existing guests will not receive services and will depart,

26 canceling existing charges. Moreover, without use of cash collateral, future reservations will also

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 13
103715353.1 0070625-00002

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 13 of 46

be cancelled.    If the Debtors are not allowed to use cash collateral for even a limited period of time, the public perception associated with the foregoing will certainly hurt, if not eviscerate, the Debtors' businesses, thereby reducing the value of the estates and potential recovery to creditors.

**F.     Proposed Cash Collateral Stipulated Order**

24.     The Debtors and Rialto have agreed to use of cash collateral on an interim basis through September 30, 2021, in accordance with the proposed stipulated order, a true and correct copy of which is attached as **Exhibit 2** hereto.

25.     The 2020 Shilo Debtors and Rialto have entered into similar stipulated cash collateral orders that have been approved by the Court in the 2020 Shilo Debtors' cases.[3]

26.     Indeed, the 2020 Shilo Debtors have kept in compliance with UST reporting requirements, have operated fully under their own financial power, and have been able to pay their vendors promptly.

27.     The Debtors submit that the proposed interim stipulated order for cash collateral use should be approved.

**G.     Compliance with Rule 4001(c) of the Federal Rules of Bankruptcy Procedure**

28.     Pursuant to Rule 4001(c)(1)(B) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), the Debtors submit that the relief requested by the Debtors pertaining to the use of cash collateral and proposed stipulated order does not contain any of the following provisions, except as otherwise indicated below:

| **Provision** | |
|---|---|
| Cross-collateralization clauses | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor. | No |

[3] See Agreed Sixth Interim Order Authorizing Debtors' Use of Cash Collateral, *In re Shilo Inn Ocean Shores, LLC*, Case No. 20-42328 (Bankr. W.D. Wash. July 20, 2021) [ECF No. 185].

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 14
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 14 of 46

| **Provision** | |
|---|---|
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | ¶14 of order |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that prime any secured lien. | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | ¶20 of order |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent. | No |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No |
| Findings of fact on matters extraneous to the approval process. | No |

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 15
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 15 of 46

## II.

## DISCUSSION

**A.    The Debtors Must Be Authorized to Use Cash Collateral to Operate, Maintain and Preserve the Hotels in Accordance with the Budgets**

A debtor's use of property of the estate is governed by Section 363 of the Bankruptcy Code. Section 363(c)(l) provides in pertinent part:

> If the business of the debtor is authorized to be operated under section. . .1108. . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C.§ 363(c)(l).  A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363.  See 11 U.S.C. §1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest. . . ." 11 U.S.C. §363(a).  Section 363(c)(2) establishes a special requirement with respect to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(l) if:

> (A) each entity that has an interest in such cash collateral consents; or
> (B)     the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

See 11 U. S.C. §363(c)(2)(A) and (B).

It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for the purpose of maintaining and operating its property.  11 U.S.C. § 363(c)(2)(B); In re Oak Glen R-Vee, 8 B.R. 213, 216 (Bankr.C.D.Cal.1981); In re Tucson Industrial Partners, 129 B.R. 614 (9th Cir.B.A.P.1991).  In addition, where the debtor is operating a business, it is extremely important

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 16
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 16 of 46

1   that the access to cash collateral be allowed in order to facilitate the goal of reorganization: "the

2   purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary

3   to operate a business." In re Dynaco Corporation, 162 B.R. 389 (Bankr.D.N.H.1993), quoting In

4   re Stein, 19 B.R. 458, 459. (Bankr.E.D.Pa.1982).

5         The only current source of revenue available to the Debtors to use to maintain and operate

6   the Hotels are the revenues being generated from the Hotels' rooms and related amenities. If the

7   Debtors are not permitted to use cash collateral to maintain and operate the Hotels, it is a virtual

8   certainty that these estates will be liquidated. Specifically, without use of cash collateral and the

9   ability to operate, existing guests will not receive services and will depart, canceling existing

10   charges. Moreover, without use of cash collateral, future reservations will also be cancelled. Even

11   if the Debtors are deprived use of cash collateral on a limited time basis, the public perception

12   associated with the foregoing will certainly hurt, if not eviscerate, the Debtors' businesses, thereby

13   reducing the value of the estates and potential recovery to creditors.

14         The operating expenses that the Debtors must be able to pay during the pendency of these

15   cases are set forth in the Budgets. The Budgets reflect the Debtors' ordinary and necessary

16   operating expenses that must be paid postpetition to preserve the Debtors' businesses. While the

17   Budgets represent the Debtors' best estimates of such expenses, the needs of the businesses may

18   fluctuate. Thus, the Debtors seek authority to deviate from the total expenses contained in the

19   Budgets by no more than 10% on a line-item basis and no more than 10% on a cumulative basis

20   without the need for further Court order. The Debtors are not seeking to use cash collateral across

21   estates; each of the Debtors has its own Budget and will use only its own cash collateral therein.

22   **B.**     **The Lender and Other Secured Creditors Are Adequately Protected**

23         To the extent that an entity has a valid security interest in the revenues generated by

24   property, those revenues constitute "cash collateral" under Section 363(a) of the Bankruptcy Code.

25   Pursuant to Section 363(c)(2), the Court may authorize the debtor to use a secured creditor's cash

26   collateral if the secured creditor is adequately protected. In re Mellor, 734 F.2d 1396, 1400 (9th

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 17
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

Case 21-41340-BDL   Doc 21   Filed 08/18/21   Ent. 08/18/21 18:03:50   Pg. 17 of 46

Cir.1984). See also In re O'Connor, 808 F.2d 1393, 1398 (10th Cir.1987); In re McCombs Properties VI, Ltd., 88 B.R. 261, 265 (Bankr.C.D.Cal.l988) ("McCombs").

Pursuant to the Supreme Court case of United Sav. Ass'n v. Timbers of Inwood Forest Assocs., 108 S.Ct. 626, 629 (1988) and subsequent case law, the property interest that a debtor must adequately protect pursuant to Sections 361(1) and (2) of the Bankruptcy Code is only the value of the lien that secures the creditor's claim. 108 S.Ct. at 630. See also McCombs, Id., at 266. Section 506(a) "limit[s] the secured status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral." McCombs, Id., at 266.

In the case of an oversecured creditor, Section 506(a) and Timbers mandate that "there is no lack of adequate protection [even where there is] a decline in collateral value" provided the secured creditor remains oversecured. McCombs, Id., at 266; In re Chauncy Street Assoc. Ltd. Partnership, 107 B.R. 7, 8 (Bankr. D. Mass. 1989). In these cases, the Lender and other secured creditors (the only other secured creditors being taxing authorities) are adequately protected by a substantial equity cushion, replacement lien, and by the continued operation of the Debtors' businesses.

**1. The Secured Creditors Will Be Adequately Protected by Substantial Equity Cushions**

As noted above, to the extent that an entity, other than the Debtors, has a valid security interest in the revenues generated by the operation of the Debtors' businesses, those revenues constitute "cash collateral" under Section 363(a) of the Bankruptcy Code. 11 U.S.C. § 363(a). Pursuant to Section 363(c)(2), the Court may authorize the Debtors to use a secured creditor's cash collateral if the secured creditor is adequately protected. In re Mellor at 1400. See also In re O'Connor at 1398; In re McCombs at 265.

It is well established that the existence of an equity cushion alone can constitute adequate protection to a secured creditor when a debtor seeks to use cash collateral. In re Mellor, 734 F.2d

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 18
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 18 of 46

1396 (9th Cir. 1984). In <u>Mellor</u>, the Ninth Circuit held that a 20% equity cushion constituted adequate protection as a matter of law. <u>Id</u>. at 140-01. The Ninth Circuit indicated that a cushion of less than 20% could also constitute adequate protection and cited with approval decisions holding that equity cushions of between 10% and 20% constituted adequate protection. <u>Id.</u>, (<u>citing In re McGowan</u>, 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980) (holding that a 10% cushion is adequate protection); <u>In re Rogers Development Corp.</u>, 2 B.R. 679, 685 (Bankr. E.D. Va. 1980) (equity cushion of approximately 15% to 20% was adequate protection notwithstanding that the debtors had no equity in the property); <u>see also</u>, <u>In re Hawaiian Pac. Indus.</u>, 17 B.R. 670, 673 (Bankr. D. Hawaii 1982) (15% cushion constituted adequate protection).

Shilo Bend's primary asset is the Bend Hotel. Based on the appraisal report of an MAI certified appraisal in 2015 when the Loan was originated, the Bend Hotel had a fair market value of $13,500,000, and Mark Hemstreet opines that the value is now at least between $15,000,000 and $20,000,000. For purposes of cash collateral use, the Debtors have used a value of $18,000,000. The Lender has a secured claim against the Bend Hotel for approximately $8,702,323. Accordingly, the Lender is protected by a $9,297,677 equity cushion, which calculates to an equity cushion percentage of 106.84%. Prepetition, Shilo Bend received an EIDL from the SBA, secured by a lien on all of Shilo Bend's personal property, and the SBA has a secured claim of $146,900. Accordingly, the SBA is protected by a $9,150,777 equity cushion, which calculates to an equity cushion percentage of 6,229.26%. The Debtors understand that Rialto may disagree with these figures.

Shilo Warrenton's primary asset is the Warrenton Hotel. Based on the appraisal report of an MAI certified appraisal in 2015 when the Loan was originated, the Warrenton Hotel had a fair market value of $6,500,000, and Mark Hemstreet opines that the value is now at least between $7,000,000 and $8,000,000. For purposes of cash collateral use, the Debtors have used a value of $7,500,000. The Lender has a secured claim against the Warrenton Hotel for approximately $4,330,740. Accordingly, the Lender is protected by a $3,169,260 equity cushion, which

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 19
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 19 of 46

calculates to an equity cushion percentage of 73.18%.  Prepetition, Shilo Warrenton received an EIDL from the SBA, secured by a lien on all of Shilo Warrenton's personal property, and the SBA has a secured claim of $90,500.  Accordingly, the SBA is protected by a $3,078,760 equity cushion, which calculates to an equity cushion percentage of 3,401.94%.  The Debtors understand that Rialto may disagree with these figures.

**2.    The Secured Creditors Will Be Further Adequately Protected by the Continued Operation of the Debtors' Businesses**

The preservation of the value of a secured creditor's lien is sufficient to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral.  In re Triplett, 87 B.R. 25 (Bankr. W.D. Tex. 1988).  See also In re Stein, 19 B.R. 458 (Bankr.E.D.Pa.1982).  The Stein Court determined that the use of cash collateral was necessary to the continued operations of the debtor, and that the creditor's secured position could only be enhanced by the continued operation of the debtor's business.  See also, In re McCombs, supra, where the court determined that the debtor's use of cash collateral for needed repairs, renovations and operating expenses eliminated the risk of diminution in the creditor's interest in the cash collateral and such use would more likely increase cash collateral.

As reflected in the Budgets, the Debtors' continued operation and maintenance of the Hotels will adequately protect the Lender and other secured creditors as the Debtors will continue to generate revenue and preserve the value of the Hotels.  Other Courts have determined that a debtor's continued business operations can constitute the adequate protection of a secured creditor.  See Matter of Pursuit Athletic Footwear, Inc., 193 B.R. 713 (Bankr. D. Del. 1996); In re Newark Airport/Hotel Ltd. Partnership, 156 B.R. 444, 450 (Bankr. D.N.J. 1993); In re Dynaco, 162 B.R. 389, 394-5 (Bankr. D.N.H. 1993); In re Immenhausen Corp., 164 B.R. 347, 352 (Bankr. M.D. Fla. 1994).

Additionally, in determining adequate protection, Courts have stressed the importance of promoting a debtor's reorganization.

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 20
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 20 of 46

In In re O'Connor, supra, the Tenth Circuit stated:

> "In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the Debtor's efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end. Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration."

808 F.2d at 1937.

The use of cash collateral is critical to the Debtors' ability to implement an effective reorganization strategy for the benefit of all creditors. As demonstrated herein, the use of the Debtors' cash collateral, in accordance with the Budgets, will preserve and maximize the Debtors' assets for the benefit of the estates and all creditors. If the Debtors are not permitted to use cash collateral to maintain and operate the Hotels, it is a virtual certainty that these estates will be liquidated. Specifically, without use of cash collateral and the ability to operate, existing guests will not receive services and will depart, canceling existing charges. Moreover, without use of cash collateral, future reservations will also be cancelled. Even if the Debtors do not have use of cash collateral on a limited time basis, the public perception associated with the foregoing will certainly hurt, if not eviscerate, the Debtors' businesses, thereby reducing the value of the estates and potential recovery to creditors.

On the other hand, if the Debtors are authorized to use cash collateral, then they will be able to continue maintaining the Hotels and generating cash flow so that they can simultaneously pursue longer term strategies for the restructuring of their financial affairs. Thus, the use of cash collateral will only enhance the prospect of the Debtors' reorganization.

### C. Compliance with Rule 4001 of the Federal Rules of Bankruptcy Procedure.

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 21
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 21 of 46

Pursuant to Bankruptcy Rule 4001(c)(1)(B), the Debtors submit that the relief requested by the Debtors pertaining to the use of cash collateral does not contain any of the following provisions, except as otherwise indicated below:

| **Provision** | |
|---|---|
| Cross-collateralization clauses | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | ¶14 of order |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that prime any secured lien | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | ¶20 of order |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 22
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 22 of 46

| Provision | |
|---|---|
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | No |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No |
| Findings of fact on matters extraneous to the approval process. | No |

Pursuant to Bankruptcy Rule 4001(b)(1)(C), the Debtors are required to serve a copy of the Motion on any entity with an interest in the Debtors' cash collateral, the 20 largest unsecured creditors, and any other entity that the Court directs. The Debtors have complied with the foregoing by serving a copy of the Notice, the Motion, the Declaration, and the declaration of Mark S. Hemstreet by email and/or U.S. mail on the secured creditors, the 20 largest unsecured creditors, the United States Trustee, and parties requesting special notice in each of the Debtors' two cases.

**III.**

**CONCLUSION**

Based on the foregoing, the Debtors submit that approval by this Court of the Motion is in the best interest of the Debtors' estates and respectfully request that the Court enter an order:

(1) affirming the adequacy of the Notice given herein;

(2) granting the Motion on an interim basis pending a final hearing thereon;

(3) entering the agreed order attached as **Exhibit 2** hereto, authorizing the Debtors to use cash collateral to pay all of the expenses set forth in the Budgets attached as **Exhibit 1**;

(4) setting a final hearing on the Motion; and

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 23
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 23 of 46

1     (5)    granting such other and further relief as the Court deems just and proper under the

2    circumstances.

3    DATED: August 18, 2021.

LEVENE, NEALE, BENDER,
YOO & BRILL L.L.P.

*/s/ John-Patrick M. Fritz*
David B. Golubchik (admitted pro hac vice)
John-Patrick M. Fritz (admitted pro hac vice)

Proposed Attorneys for Debtors and
Debtors-in-Possession

STOEL RIVES LLP

*/s/ Bryan T. Glover*
Bryan T. Glover, WSBA No. 51045

Proposed Attorneys for Debtors and
Debtors-in-Possession

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 24
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 24 of 46

## CERTIFICATE OF COMPLIANCE WITH APPENDIX A TO LOCAL BANKRUPTCY RULES 4001-3

The undersigned certifies that the Debtors do have an agreement with the Lender on the use of cash collateral. The agreement takes the form of the proposed agreed order, a true and correct copy of which is attached to the Motion.

The agreement with the Lender and proposed agreed order contains the following provisions listed in paragraph A of Appendix A to the Local Bankruptcy Rules:

- #5 - Waiver of § 506(c) – paragraph 14 of the proposed agreed order contains a waiver of § 506(c) surcharge rights, but only for the period from the Petition Date through the date of a Termination Date, as that term is defined in the order. The Debtors believe that this provision is reasonable because it has been approved in the Debtors' affiliates' cases, and it is limited to the period of that the order is in effect (i.e., only up to the Termination Date).

- #8 - Automatic relief from the stay of § 362(a)… - paragraph 20 of the proposed agreed order contains a modification of the automatic stay of § 362(a), but the order would require Lender to provide the Debtors and U.S. Trustee with five business days written notice prior to taking any enforcement actions or remedies. The Debtors believe that this provision is reasonable because it has been approved in the Debtors' affiliates' cases, and it provides notice and opportunity for the Debtors and U.S. Trustee to object if Lender seeks enforcement.

*/s/ Andrew H. Morton*
Andrew H. Morton, WSBA No. 49467

EMERGENCY EX PARTE MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTORS TO USE CASH COLLATERAL
ON INTERIM BASIS AND SETTING FINAL HEARING - 25
103715353.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 25 of 46

# Exhibit 1

# Shilo Inn Bend, LLC
## PROFORMA OPERATING STATEMENT PREPARED ON CASH FLOW BASIS
### August 14, 2021 to October 31, 2021

| | First Four Weeks by Week (Aug 14 to Sept 10, 2021) | | | | | Sept 11-30 | October 2021 | Aug 14 to |
|---|---|---|---|---|---|---|---|---|
| | Week 1 Aug 14-20 | Week 2 Aug 21-27 | Week 3 Aug 28-Sep 3 | Week 4 Sep 4-10 | First 4 Weeks Total | 20-Day Period | Full Month | Oct 31, 2021 |
| **AVAILABLE ROOMS** | 1,050 | 1,050 | 1,050 | 1,050 | **4,200** | 3,000 | 4,650 | **11,850** |
| **ROOMS SOLD** | 590 | 595 | 615 | 650 | **2,450** | 2,540 | 1,960 | **6,950** |
| **COMP ROOM NIGHTS** | 4 | 4 | 4 | 4 | **16** | 16 | 16 | **48** |
| **TOTAL ROOMS OCCUPIED** | 594 | 599 | 619 | 654 | **2,466** | 2,556 | 1,976 | **6,998** |
| **AVERAGE DAILY RATE** | $121.00 | $122.50 | $125.00 | $130.00 | **$124.76** | $117.00 | $117.50 | **$119.88** |
| **AVERAGE DAILY RATE (incl comps)** | $120.19 | $121.69 | $124.00 | $129.20 | **$123.95** | $116.28 | $116.55 | **$119.06** |
| **OCCUPANCY % (rooms sold)** | 56.2% | 56.7% | 58.6% | 61.9% | **58.3%** | 84.7% | 42.2% | **58.6%** |
| **OCCUPANCY % (incl comps)** | 56.6% | 57.0% | 59.0% | 62.3% | **58.7%** | 85.2% | 42.5% | **59.1%** |
| **REVENUE PER AVAILABLE ROOM** | $67.99 | $69.42 | $73.22 | $80.48 | **$72.78** | $99.07 | $49.53 | **$70.31** |
| **DEPARTMENTAL REVENUE** | | | | | | | | |
| ROOMS | 71,390 | 72,890 | 76,880 | 84,500 | 305,660 | 297,200 | 230,300 | 833,160 |
| MISCELLANEOUS | 1,960 | 2,000 | 2,110 | 2,320 | 8,390 | 8,170 | 6,330 | 22,890 |
| OCCUPANCY TAX COLLECTIONS [2] | 6,780 | 6,920 | 7,300 | 8,030 | 29,030 | 28,230 | 21,880 | 79,140 |
| **GROSS REVENUE and OTHER CASH RECEIPTS** | 80,130 | 81,810 | 86,290 | 94,850 | 343,080 | 333,600 | 258,510 | 935,190 |
| **COST OF GOODS / SERVICES SOLD** | | | | | | | | |
| ROOMS [3] | 21,800 | 22,200 | 23,400 | 25,600 | 93,000 | 85,500 | 68,400 | 246,900 |
| MISCELLANEOUS | 690 | 700 | 740 | 810 | 2,940 | 2,860 | 2,220 | 8,020 |
| **TOTAL COST OF GOODS / SERVICES SOLD** | 22,490 | 22,900 | 24,140 | 26,410 | 95,940 | 88,360 | 70,620 | 254,920 |
| **DEPARTMENTAL PROFIT and OTHER CASH RECEIPTS** | | | | | | | | |
| ROOMS | 49,590 | 50,690 | 53,480 | 58,900 | 212,660 | 211,700 | 161,900 | 586,260 |
| MISCELLANEOUS | 1,270 | 1,300 | 1,370 | 1,510 | 5,450 | 5,310 | 4,110 | 14,870 |
| OCCUPANCY TAX CASH FLOW IN | 6,780 | 6,920 | 7,300 | 8,030 | 29,030 | 28,230 | 21,880 | 79,140 |
| **GROSS PROFIT** | 57,640 | 58,910 | 62,150 | 68,440 | 247,140 | 245,240 | 187,890 | 680,270 |
| **GEN & ADMIN EXPENSE AND OTHER CASH OUTFLOWS** | | | | | | | | |
| ADVERTISING & PROMOTION | 4,400 | 4,490 | 4,740 | 5,210 | 18,840 | 19,300 | 15,200 | 53,340 |
| PROPERTY MAINTENANCE | 10,420 | 10,610 | 11,120 | 12,100 | 44,250 | 39,200 | 30,600 | 114,050 |
| GENERAL & ADMINISTRATIVE | 14,090 | 14,360 | 15,070 | 16,440 | 59,960 | 54,400 | 42,400 | 156,760 |
| UTILITIES (Week 2 figure represents deposits) | 0 | 15,000 | 0 | 0 | 15,000 | 46,800 | 36,500 | 98,300 |
| INSURANCE | 0 | 0 | 8,209 | 0 | 8,209 | 0 | 8,209 | 16,418 |
| SECURED PROPERTY TAX | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| FRANCHISE FEES [4] | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SMC MANAGEMENT FEE [4] | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OCCUPANCY TAX [2] | 0 | 0 | 31,740 | 0 | 31,740 | 30,720 | 39,390 | 101,850 |
| **TOTAL GENERAL & ADMINISTRATIVE EXPENSES AND OTHER CASH OUTFLOWS** | 28,910 | 44,460 | 70,879 | 33,750 | 177,999 | 190,420 | 172,299 | 540,718 |
| **NET CASH FLOW FROM OPERATIONS** | 28,730 | 14,450 | (8,729) | 34,690 | 69,141 | 54,820 | 15,591 | 139,552 |
| **Cash Beginning of Period** | - | 28,730 | 43,180 | 34,451 | - | 69,141 | 123,961 | |
| **Change in period** | 28,730 | 14,450 | (8,729) | 34,690 | 69,141 | 54,820 | 15,591 | |
| **Cash End of Period** | 28,730 | 43,180 | 34,451 | 69,141 | 69,141 | 123,961 | 139,552 | |
| **Trade Accounts Receivable Beginning of Period [5]** | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | |
| **Change in period [6]** | - | - | - | - | - | - | - | |
| **Trade Accounts Receivable End of Period** | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | |
| **Est. Inventory Beginning of Period [5]** | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | |
| **Change in period [6]** | - | - | - | - | - | - | - | |
| **Inventory End of Period** | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | |
| **FF&E (Est. FMV) Beginning of Period [5]** | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | |
| **Change in period [6]** | - | - | - | - | - | - | - | |
| **FF&E End of Period** | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | |
| **Real Property (FMV) Beginning of Period** | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | |
| **Change in period [6]** | - | - | - | - | - | - | - | |
| **Real Property (FMV) End of Period** | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | |
| **TOTAL ALL ASSETS - END OF PERIOD** | 18,069,480 | 18,083,930 | 18,075,201 | 18,109,891 | 18,109,891 | 18,164,711 | 18,180,302 | |

**Notes:**

1) Payroll expense is included in Rooms, A&G, Sales, & Maintenance departments as appropriate.
2) Occupancy tax payments are estimated at 9.5% of revenue and payments are based on the prior month's receipts.
3) Rooms Department includes additional $1,250 per week / $5,000 per month of expenses for unplanned but necessary expenditures.
4) Affiliated company franchise and management fees are being deferred during the periods presented.
5) Estimated Balances as of 8/14/21.
6) Net change is assumed to be zero each period.

# Shilo Inn Warrenton, LLC
## PROFORMA OPERATING STATEMENT PREPARED ON CASH FLOW BASIS
### August 14, 2021 to October 31, 2021

| | First Four Weeks by Week (Aug 14 to Sept 10, 2021) | | | | | Sept 11-30 | October 2021 | Aug 14 to |
|---|---|---|---|---|---|---|---|---|
| | Week 1 Aug 14-20 | Week 2 Aug 21-27 | Week 3 Aug 28-Sep 3 | Week 4 Sep 4-10 | First 4 Weeks Total | 20-Day Period | Full Month | Oct 31, 2021 |
| AVAILABLE ROOMS | 441 | 441 | 441 | 441 | 1,764 | 1,260 | 1,953 | 4,977 |
| ROOMS SOLD | 225 | 250 | 260 | 300 | 1,035 | 1,180 | 1,250 | 3,465 |
| COMP ROOM NIGHTS | 4 | 4 | 4 | 4 | 16 | 16 | 16 | 48 |
| TOTAL ROOMS OCCUPIED | 229 | 254 | 264 | 304 | 1,051 | 1,196 | 1,266 | 3,513 |
| AVERAGE DAILY RATE | $121.00 | $122.50 | $125.00 | $130.00 | $124.99 | $125.00 | $120.00 | $123.19 |
| AVERAGE DAILY RATE (incl comps) | $118.91 | $120.59 | $123.11 | $128.29 | $123.08 | $123.33 | $118.48 | $121.51 |
| OCCUPANCY % (rooms sold) | 51.0% | 56.7% | 59.0% | 68.0% | 58.7% | 93.7% | 64.0% | 69.6% |
| OCCUPANCY % (incl comps) | 51.9% | 57.6% | 59.9% | 68.9% | 59.6% | 94.9% | 64.8% | 70.6% |
| REVENUE PER AVAILABLE ROOM | $61.75 | $69.46 | $73.70 | $88.44 | $73.33 | $117.06 | $76.80 | $85.77 |
| **DEPARTMENTAL REVENUE** | | | | | | | | |
| ROOMS | 27,230 | 30,630 | 32,500 | 39,000 | 129,360 | 147,500 | 150,000 | 426,860 |
| MISCELLANEOUS | 750 | 840 | 890 | 1,070 | 3,550 | 4,060 | 4,130 | 11,740 |
| OCCUPANCY TAX COLLECTIONS [2] | 3,270 | 3,680 | 3,900 | 4,680 | 15,530 | 17,700 | 18,000 | 51,230 |
| GROSS REVENUE and OTHER CASH RECEIPTS | 31,250 | 35,150 | 37,290 | 44,750 | 148,440 | 169,260 | 172,130 | 489,830 |
| **COST OF GOODS / SERVICES SOLD** | | | | | | | | |
| ROOMS [3] | 6,000 | 6,600 | 6,900 | 8,100 | 27,600 | 30,800 | 31,300 | 89,700 |
| MISCELLANEOUS | 260 | 290 | 310 | 370 | 1,230 | 1,420 | 1,450 | 4,100 |
| TOTAL COST OF GOODS / SERVICES SOLD | 6,260 | 6,890 | 7,210 | 8,470 | 28,830 | 32,220 | 32,750 | 93,800 |
| **DEPARTMENTAL PROFIT and OTHER CASH RECEIPTS** | | | | | | | | |
| ROOMS | 21,230 | 24,030 | 25,600 | 30,900 | 101,760 | 116,700 | 118,700 | 337,160 |
| MISCELLANEOUS | 490 | 550 | 580 | 700 | 2,320 | 2,640 | 2,680 | 7,640 |
| OCCUPANCY TAX CASH FLOW IN | 3,270 | 3,680 | 3,900 | 4,680 | 15,530 | 17,700 | 18,000 | 51,230 |
| GROSS PROFIT | 24,990 | 28,260 | 30,080 | 36,280 | 119,610 | 137,040 | 139,380 | 396,030 |
| **GEN & ADMIN EXPENSE AND OTHER CASH OUTFLOWS** | | | | | | | | |
| ADVERTISING & PROMOTION | 1,790 | 1,950 | 2,040 | 2,340 | 8,120 | 8,000 | 8,100 | 24,220 |
| PROPERTY MAINTENANCE | 4,440 | 4,840 | 5,060 | 5,820 | 20,160 | 22,300 | 22,600 | 65,060 |
| GENERAL & ADMINISTRATIVE | 4,920 | 5,370 | 5,620 | 6,500 | 22,410 | 24,900 | 25,200 | 72,510 |
| UTILITIES (Week 2 in figure represents deposits) | 0 | 10,000 | 0 | 0 | 10,000 | 13,000 | 13,200 | 36,200 |
| INSURANCE | 0 | 0 | 2,238 | 0 | 2,238 | 0 | 2,238 | 4,476 |
| SECURED PROPERTY TAX | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| FRANCHISE FEES [4] | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SMC MANAGEMENT FEE [4] | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OCCUPANCY TAX [2] | 0 | 0 | 18,010 | 0 | 18,010 | 18,360 | 24,050 | 60,420 |
| TOTAL GENERAL & ADMINISTRATIVE EXPENSES AND OTHER CASH OUTFLOWS | 11,150 | 22,160 | 32,968 | 14,660 | 80,938 | 86,560 | 95,388 | 262,886 |
| NET CASH FLOW FROM OPERATIONS | 13,840 | 6,100 | (2,888) | 21,620 | 38,672 | 50,480 | 43,992 | 133,144 |
| Cash Beginning of Period | - | 13,840 | 19,940 | 17,052 | - | 38,672 | 89,152 | |
| Change in period | 13,840 | 6,100 | (2,888) | 21,620 | 38,672 | 50,480 | 43,992 | |
| Cash End of Period | 13,840 | 19,940 | 17,052 | 38,672 | 38,672 | 89,152 | 133,144 | |
| Trade Accounts Receivable Beginning of Period [5] | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| Trade Accounts Receivable End of Period | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | |
| Est. Inventory Beginning of Period [5] | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| Inventory End of Period | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | |
| FF&E (Est. FMV) Beginning of Period [5] | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| FF&E End of Period | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | |
| Real Property (FMV) Beginning of Period | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| Real Property (FMV) End of Period | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | |
| TOTAL ALL ASSETS - END OF PERIOD | 7,533,840 | 7,539,940 | 7,537,052 | 7,558,672 | 7,558,672 | 7,609,152 | 7,653,144 | |

**Notes:**

1) Payroll expense is included in Rooms, A&G, Sales, & Maintenance departments as appropriate.

2) Occupancy tax payments are estimated at 12.0% of revenue and payments are based on the prior month's receipts.

3) Rooms Department includes additional $1,250 per week / $5,000 per month of expenses for unplanned but necessary expenditures.

4) Affiliated company franchise and management fees are being deferred during the periods presented.

5) Estimated Balances as of 8/14/21.

6) Net change is assumed to be zero each period.

# Exhibit 2

1

2

3

4

5

6

7

8

9       UNITED STATES BANKRUPTCY COURT
        WESTERN DISTRICT OF WASHINGTON
10                   AT TACOMA

11  In re:                                    Case No. 21-41340-BDL

12  SHILO INN, BEND, LLC, *et. al.,*[1],      **AGREED FIRST INTERIM ORDER
                                              AUTHORIZING DEBTOR'S USE OF
13          Debtors and Debtors-in-Possession, CASH COLLATERAL AND
                                              SETTING A FINAL HEARING**
14      _____

15  ☒ Affects All Debtors

16  ☐ Affects SHILO INN, BEND, LLC
17  ☐ Affects SHILO INN, WARRENTON, LLC

18      _____

19          The Court, having read and considered the Ex Parte Emergency Motion for Entry of an

20  Agreed First Interim Order Authorizing Debtor's Use of Cash Collateral and Setting a Final

21  Hearing (the "***Motion***") [Doc. No. __] filed by filed by Shilo Inn, Bend, LLC ("***Shilo Bend***") and

22  Shilo Inn, Warrenton, LLC ("***Shilo Warrenton***") (each a "***Debtor***" and, collectively, the

23  "***Debtors***") the debtors and debtors in possession in the above-captioned, proposed jointly-

24  administered chapter 11 bankruptcy cases, and any responses thereto, and the pleadings and

25  _____

26  [1] The Debtors are Shilo Inn, Bend, LLC, Bankruptcy Case No. 21-41340-BDL and Shilo Inn, Warrenton, LLC,
    Bankruptcy Case No. 21-41341-BDL.  The cases are jointly administered.

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH                    **STOEL RIVES LLP**
COLLATERAL AND (B) SETTING A FINAL HEARING - 1                   ATTORNEYS
                                                      600 University Street, Suite 3600, Seattle, WA 98101
                                                              *Telephone 206.624.0900*
103718748.1 0070625-00002

1  declarations submitted therewith, the Court hereby finds and concludes:

2    A.    The Debtors filed voluntary petitions for relief under Chapter 11 on August 13,

3  2021 (the "***Petition Date***").  The Debtor has retained control over its assets and continues to operate

4  its business pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

5    B.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

6    C.    This is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2)(M), among

7  other provisions, and the Court has the authority to enter this Order pursuant to 11 U.S.C. §§ 363

8  and 105, among other sections.

9    D.    Notice of the ex parte Motion was sufficient under the circumstances.

10    E.    The predecessor in interest of RSS WFCM2015NXS4-OR SIB, LLC, secured

11  creditor as to the loan to Shilo Bend, and RSS WFCM2016NXS5-OR SIW, LLC, secured creditor

12  as to the loan to Shilo Warrenton (each a "***Secured Creditor***" and, collectively, the "***Secured***

13  ***Creditor***") extended certain pre-petition credit facilities to Shilo Bend and Shilo Warrenton,

14  respectively (collectively, the "***Credit Facilities***").

15    F.    The Credit Facilities are evidenced, in part, by certain notes, security instruments,

16  assignments of leases, UCC-1 statements, and any and all other pre-petition documents,

17  agreements, and instruments evidencing, securing, or in any manner relating to the loans, which

18  shall be collectively referred to as the "***Loan Documents***."

19    G.    The Secured Creditor succeeded by assignment to all of the interests of the Original

20  Lender in the Loan Documents; and as a result, the Secured Creditor is the current holder of the

21  Notes and the Loan Documents.

22    H.    The Debtors are in the process of reviewing and analyzing their respective

23  obligations under the Loan Documents "(the "***Prepetition Obligations***") and the validity, extent

24  and priority of Secured Creditor's interests in and to the Debtors' assets (the "***Prepetition***

25  ***Collateral***").

26    I.    The Debtors propose to use Cash Collateral pursuant to the terms set forth herein

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL AND (B) SETTING A FINAL HEARING - 2

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

103718748.1 0070625-00002

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 31 of 46

and the separate respective budgets attached hereto as Exhibit A (with respect to Shilo Bend) and Exhibit B (with respect to Shilo Warrenton) (each, as applicable, the "***Budget***").  The Debtors have requested that the Secured Creditor consent to the Debtor's use of its Cash Collateral, and the Secured Creditor has agreed to do so, but only on the terms set forth in this Interim Order.

J.     The terms and conditions of this Order are fair and reasonable in connection with the Debtor's request to use Cash Collateral and provide adequate protection to the Secured Creditor and the entry of this Order is in the best interests of the Debtor's estate and its creditors.

Now, based upon the foregoing, it is hereby ORDERED:

1.     The Motions are GRANTED on an interim limited basis pursuant to the terms and conditions of this Order.

2.     Use of Cash Collateral.  Subject to the terms of this Order, each Debtor is authorized to use cash collateral as defined in section 363(a) of the Bankruptcy Code ("***Cash Collateral***") to pay for the operating expenses and costs of administration incurred by the Debtor strictly in accordance with the Budget, for the period of time (the "***Interim Period***") from the date hereof until the earliest to occur of (a) the date that this Order ceases to be in full force and effect, or (b) the occurrence of a "***Termination Event***," as defined below. Notwithstanding the foregoing, the Debtor shall not be permitted to pay management fees to an "insider."   The Debtor shall provide the Secured Creditor with copies of all other agreements to which it and any "insider" is a party in respect of which payments are provided for in the Budget. The Debtor's authority to use the Cash Collateral shall terminate (A) automatically upon the occurrence of a Termination Event as set forth below in paragraphs 3 (a), (b), (c), (d), (e), (f), (g), (h)(i), and (h)(ii) (all such Termination events being referred to as the "***Automatic Termination Events***"); or, (B) upon further order or relief from the Court upon the occurrence of any other Termination Event.   Notwithstanding anything herein, on the occurrence of a Termination Event, all of the rights, remedies, benefits, and protections provided to the Secured Creditor under this Order shall survive such Termination Event.

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL AND (B) SETTING A FINAL HEARING - 3

103718748.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 32 of 46

3.      Termination Event.  A Termination Event shall constitute any of the following:

a)      September 30, 2021 (the *"Outside Date"*);

b)      the Debtor shall fail to deposit on a daily basis all cash receipts and collections from whatever source in its post-petition debtor-in-possession account(s);

c)      any order shall be entered, other than with the consent of the Secured Creditor, reversing, amending, supplementing, staying, vacating, or otherwise modifying this Order in any material respect or terminating the use of Cash Collateral by the Debtor pursuant to this Order;

d)      an application shall be filed by the Debtor for the approval of any Superpriority Claim (as defined below) or any lien in the Chapter 11 Case (as defined below) which is *pari passu* with or senior to the Adequate Protection Obligations (as defined below) or Adequate Protection Liens (as defined below), or there shall be granted any such *pari passu* or senior Superpriority Claim or lien in each case, except any such Superpriority Claim or lien arising hereunder;

e)      any order shall be entered granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to the holder or holders of any security interest, lien or right of setoff other than a security interest, lien or right of setoff of the Secured Creditor, to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like), possession, set-off or any similar remedy with respect to any Collateral or any assets of the Debtor necessary to the conduct of its businesses;

f)      except as permitted by any order of this Court and included in the Budget, the Debtor shall make any payment in respect of a prepetition claim;

g)      (i) Shilo Bend's or Shilo Warrenton's chapter 11 case (each a *"Chapter 11 Case"*) shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code; or (ii) a trustee under chapter 11 of the Bankruptcy Code, a responsible officer, or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in section

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL AND (B) SETTING A FINAL HEARING - 4

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

103718748.1 0070625-00002

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 33 of 46

1 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code shall

2 be appointed or elected in a Chapter 11 Case;

3     h)     except as would not reasonably be expected, individually or in the

4 aggregate, to have a material adverse effect, the Debtor fails to keep and maintain all property in

5 good working order and condition, ordinary wear and tear excepted;

6     i)     the Debtor (i) fails to maintain, with financially sound and reputable

7 insurance companies (x) insurance in such amounts and against such risks as are customarily

8 maintained by companies of established repute engaged in the same or similar businesses operating

9 in the same or similar locations and (y) all insurance required to be maintained pursuant to the

10 Loan Documents, or (ii) fails to furnish to the Secured Creditor, upon reasonable request,

11 information in reasonable detail as to the insurance so maintained;

12     j)     the Debtor fails to comply with all laws, rules, regulations, and orders of

13 any Governmental Authority applicable to it, its operations or its property, except where the failure

14 to do so, individually or in the aggregate, would not reasonably be expected to result in a material

15 adverse effect, *provided*, that the Debtor shall be entitled to contest in good faith any laws, rules,

16 regulations and order of any Governmental Authority so long as, prior to contesting such matters,

17 the Debtor notifies and obtains written consent of the Secured Creditor, which consent shall not

18 be unreasonably withheld; or

19     k)     other than as provided in subparagraphs (a) through (g) of this paragraph 3,

20 the Debtor fails to comply with any of the terms or conditions of this Order; *provided, however*,

21 that the Secured Creditor may waive, in writing, any Termination Event.

22     4.     <u>Variances</u>. The Debtor shall not exceed any line item on the Budget by an amount

23 exceeding ten percent (10%) of each such line item; *provided*, *however*, that the Debtor may make

24 expenditures up to ten percent (10%) in excess of the total budgeted expenses for that month in

25 the Budget so long as actual disbursements do not exceed one hundred and ten percent (110%) of

26 the budgeted total expenses for such month of the Budget (collectively, the "***Allowed Variance***").

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL AND (B) SETTING A FINAL HEARING - 5

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

103718748.1 0070625-00002

To the extent that the Debtor's use of funds is lower than provided for in the budget on a given week during any period therein, the unused portion made be rolled over to the next weekly time period in the budget.

5. <u>Additional Approvals</u>. In the event that an expense arises which is not within any of the approved line items in the Budget, or the Debtor anticipates that any line item will need to be exceeded by more than the Allowed Variance, the Debtor shall request approval from the Secured Creditor, together with such back up and documentation as the Secured Creditor may reasonably request, and the Secured Creditor shall have three (3) business days after the provision of the request and the required back up and documentation within which to consent or object; *provided, however*, in the event that the Secured Creditor does not consent or if the requested expenditure presents an immediate threat to the business or property of the Debtor requiring action or remediation before the expiration of three (3) business days, the Debtor may seek an expedited response period from the Secured Creditor or the Debtor may file a motion with the Court seeking amendment of the Budget and approval of the additional expense; *provided, further, however*, to the extent possible, that prior to making any such application to the Court, the Debtor shall have requested the Secured Creditor make an expedited determination whether to approve the Debtor's proposed expenditure and provided the Secured Creditor with sufficient information and documentation to consider the Debtor's request for approval. The Debtor shall not incur such additional expense absent any such approval by the Secured Creditor or the Court.

6. <u>Professional Fees</u>. Notwithstanding anything to the contrary in this Order, no payments for the Debtor's professional fees (including but not limited to those for the Debtor's attorneys) are budgeted to be paid during the Interim Period, and such payments shall not in any event be made without prior notice, hearing, and approval of this Court.

7. <u>Reporting</u>. Within five (5) days after the last business day of each month commencing October 7, 2021 (each such date being referred to as a "***Reference Date***"), the Debtor shall provide the Secured Creditor with a comparison of its actual expenditures in the month then

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL AND (B) SETTING A FINAL HEARING - 6

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

103718748.1 0070625-00002

Case 21-41340-BDL   Doc 21   Filed 08/18/21   Ent. 08/18/21 18:03:50   Pg. 35 of 46

1  ending to the Budget, on a line-by-line basis, in a form reasonably acceptable to the Secured

2  Creditor, consistent with the parties' prepetition practice.

3      8.    <u>Adequate Protection</u>.  The Secured Creditor is entitled, under section 363(e) of the

4  Bankruptcy Code, to adequate protection of its interest in the Prepetition Collateral securing the

5  Prepetition Obligations, including Cash Collateral, for and equal in amount to the amount of Cash

6  Collateral used from and after the Petition Date, and, subject to a motion and hearing, the aggregate

7  diminution in the value of the Secured Creditor's interests in the Prepetition Collateral from and

8  after the Petition Date, if any, including any such diminution resulting from (a) the use of Cash

9  Collateral, (b) the sale, lease, or use by the Debtors (or other decline in value) of the Prepetition

10  Collateral, and (c) the imposition of the automatic stay under section 362 of the Bankruptcy Code

11  (the aggregate amount of such diminution, which shall expressly include, among other things, the

12  aggregate amount of the Cash Collateral used by the Debtors from and after the Petition Date (the

13  "***Adequate Protection Obligations***")).[2]  Although the Debtor contends that Secured Creditor is

14  adequately protected by, among other things, substantial equity cushion, the Secured Creditor

15  disputes such contention and contends that the Debtor cannot offer adequate protection for its use

16  of Cash Collateral.  The Secured Creditor has, however, consented to the Debtor's use of Cash

17  Collateral, subject to and expressly conditioned upon the granting of protections as provided for

18  in this Order.

19      9.    <u>Intentionally Omitted</u>.

20      10.    <u>Replacement Liens as Adequate Protection to the Secured Creditor</u>.

21  Notwithstanding the provisions of section 552(a) of the Bankruptcy Code, and in addition to the

22  security interests preserved by section 552(b) of the Bankruptcy Code, the Debtor grants, in favor

23  of the Secured Creditor and as security for all indebtedness that is owed by the Debtor to the

---

[2] The capitalized terms "Adequate Protection Obligations" and "Adequate Protection Liens" are used in this Order for convenience only, and those terms or any other reference to adequate protection in this Order do not constitute a finding or otherwise imply that the protections and liens granted to the Secured Creditor constitute adequate protection under sections 361, 362, 363, or 364 of the Bankruptcy Code.

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL AND (B) SETTING A FINAL HEARING - 7

103718748.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 36 of 46

Secured Creditor, under the Loan Documents, but only to the extent of the Adequate Protection

Obligations, a first priority post-petition security interest and lien in, to and against all of the

Debtor's assets, to the same priority, validity and extent that the Secured Creditor held a properly

perfected pre-petition security interest in such assets, which are or have been acquired, generated

or received by the Debtor subsequent to the Petition Date, as well as in all presently owned and

hereafter acquired property which is not subject to a prior perfected and enforceable pre-petition

lien or security interest, but excluding any claims or recoveries by or on behalf of the Debtor, its

estate or any trustee appointed herein arising under sections 544 through 550, inclusive, of the

Bankruptcy Code (collectively, the *"Postpetition Collateral;"* the Prepetition Collateral and the

Postpetition Collateral are collectively referred to as the *"Collateral"*).

     11.   <u>Perfection</u>.  The liens and security interests granted in this Order (the *"Adequate Protection Liens"*) are deemed perfected without the necessity for filing or execution of documents which might otherwise be required under non-bankruptcy law for the perfection of said security interests.  Notwithstanding, the Secured Creditor is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take any other action in order to validate and perfect the liens granted to it hereunder.  The Debtor shall execute and deliver to the Secured Creditor all such agreements, financing statements, instruments, and other documents as the Secured Creditor may reasonably request to evidence, confirm, validate, or perfect the liens granted pursuant hereto (other than mortgages) and all such financing statements, control agreements, notices of liens, or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded at the time and on the date of the Petition Date.  A certified copy of this Order may, in the discretion of the Secured Creditor, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments. Each and every federal, state, and local government agency or department may accept the entry by this Court of this Order as evidence of the validity, enforceability, and perfection on the Petition

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL AND (B) SETTING A FINAL HEARING - 8

103718748.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 37 of 46

Date of the Adequate Protection Liens granted herein to or for the benefit of the Secured Creditor. The Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Collateral without the prior written consent of the Secured Creditor (and no such consent shall be implied from any other action, inaction, or acquiescence by the Secured Creditor) or an order of this Court.

12.  **Inspection**. Upon reasonable notice and at such reasonable times during normal business hours and otherwise as may reasonably be requested so as not to interfere with the conduct of the Debtor's business, the Debtor shall permit any representatives designated by the Secured Creditor, to inspect, copy, and take extracts from their financial and accounting records and all records and files of the Debtor pertaining to the Collateral, and to discuss its affairs, finances, and accounts with its officers, financial advisors, and independent public accountants.

13.  Superpriority Claim.  The provisions of this Order are without prejudice to the Secured Creditor's right to seek the allowance of a superpriority administrative expense claim (the "*Superpriority Claim*") under section 507(b) of the Bankruptcy Code with respect to the Adequate Protection Obligations.

14.  No Surcharge.  During the term of this stipulated Order, no administrative expense claims, including fees and expenses of professionals, that are or have been incurred from the Petition Date through and including the date of any Termination Event shall be charged or assessed against or recovered from the Collateral or attributed to the Secured Creditor with respect to its interests in the Collateral pursuant to the provisions of section 506(c) of the Bankruptcy Code or otherwise by, through, or on behalf of the Debtor, without the prior written consent of the Secured Creditor, and no such consent shall be implied from any action, inaction, or acquiescence by, either with or without notice to, the Secured Creditor.  Except as set forth herein, the Secured Creditor has not consented or agreed to the use of Cash Collateral subsequent to the Petition Date.

15.  Notwithstanding the above or anything to the contrary in this Order, the Secured Creditor and the Debtor may each seek modification of the adequate protection provided in this

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL AND (B) SETTING A FINAL HEARING - 9

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

103718748.1 0070625-00002

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 38 of 46

Order, without prejudice to the rights of the other party hereto or any party in interest to contest any such modification.

16. <u>No Novation</u>. This Order shall not cause a novation of any of the Secured Creditor's secured documentation or Loan Documents.

17. <u>Creditor Not Deemed Owner or Operator</u>. Solely by agreeing to the use of cash collateral by the Debtor, the Secured Creditor shall not be deemed to have assumed any liability to any third person, and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor or of its assets.

18. <u>Non-Waiver of Rights and Remedies</u>.

a. This Order is not intended to and shall not prejudice, alter, affect or waive any rights and/or remedies of the Secured Creditor (with respect to liens, claims, value determinations, and all other matters) under the Bankruptcy Code or applicable non-bankruptcy law (including, but not limited to, all matters pertaining to cash and other collateral).

b. This Order and the Budget shall constitute valid and binding obligations of the Debtor and the Secured Creditor, enforceable against the Debtor and the Secured Creditor in accordance with its terms. No obligation, payment, transfer, or grant of security under this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable nonbankruptcy law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

c. The failure or delay by the Secured Creditor to exercise its rights and remedies under this Order shall not constitute a waiver of any of the rights of the Secured Creditor hereunder or otherwise, and any single or partial exercise of such rights and remedies against any of the Debtors or the Collateral shall not be construed to limit any further exercise of such rights and remedies against any or all of the other Debtor and/or Collateral.

d. Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL AND (B) SETTING A FINAL HEARING - 10

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

103718748.1 0070625-00002

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 39 of 46

1    impair (i) any of the rights of any of the Secured Creditor under the Bankruptcy Code or under

2    non-bankruptcy law, including, without limitation, the right of any of the Secured Creditor to

3    (A) request termination or modification of the automatic stay of section 362 of the Bankruptcy

4    Code, (B) request dismissal or conversion to chapter 7 of a Chapter 11 Case, or appointment of a

5    chapter 11 trustee or examiner (including with expanded powers), or (C) propose, subject to the

6    provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans upon the expiration

7    or termination of the Debtor's exclusive period, (ii) any other rights, claims, or privileges (whether

8    legal, equitable, or otherwise) of the Secured Creditor, (iii) the rights of the Debtor to oppose any

9    requests made in accordance with clauses (i)(A), (B) and (C) above, (iv) upon a Termination Event,

10   the right of the Debtor to request approval of this Court for use of Cash Collateral, subject to the

11   right of the Secured Creditor to object and the need for the Debtor to obtain Court approval (and

12   meet all applicable legal standards) prior to any further use of Cash Collateral after the Termination

13   Event, and (v) any right of any party in interest to object to the terms and conditions of any

14   subsequent request by the Debtor for use of Cash Collateral.

15        e.    The provisions of this Order shall be binding upon and inure to the benefit

16   of each of the Secured Creditor, the Debtor and their respective successors and assigns (including

17   any estate representative, chapter 7 trustee, or other trustee or fiduciary hereafter appointed as a

18   legal representative of the Debtors or with respect to the property of the estates of the Debtors).

19        19.   No Priming.  The Adequate Protection Liens shall not be (a) subject or junior to

20   any lien that is avoided and preserved for the benefit of the Debtor's estate under section 551 of

21   the Bankruptcy Code, or (b) subordinated to or made *pari passu* with any other lien, whether under

22   section 364(d) of the Bankruptcy Code or otherwise.  No lien having a priority superior to or *pari*

23   *passu* with those granted by this Order with respect to the Adequate Protection Obligations shall

24   be granted or allowed until the indefeasible payment in full in cash and satisfaction in the manner

25   provided in this Order of the Adequate Protection Obligations, with the exception of prepetition

26   or postpetition ad valorem taxes that may be owed to the Deschutes County, Oregon, or Clatsop

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL AND (B) SETTING A FINAL HEARING - 11

103718748.1 0070625-00002

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 40 of 46

County, Oregon, Tax Collector. No claim having a priority superior to or *pari passu* with the Superpriority Claims granted by this Order with respect to the Adequate Protection Obligations shall be granted or allowed until the indefeasible payment in full in cash and satisfaction in the manner provided in this Order of the Adequate Protection Obligations.

20. <u>Limited Relief from Automatic Stay</u>. The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the Secured Creditor to exercise, upon the occurrence and during the continuation of an Automatic Termination Event, all rights and remedies provided for hereunder, and to take any or all of the following actions without further order of or application to this Court: (a) terminate the Debtor's use of Cash Collateral; (b) declare all Adequate Protection Obligations to be immediately due and payable; and (c) take any other actions or exercise any other rights or remedies permitted under this Order or applicable law to effect the repayment and satisfaction of the Adequate Protection Obligations; provided, however, that the Secured Creditor shall provide five (5) business days written notice (by facsimile, telecopy, electronic mail, or otherwise) to the Office of the United States Trustee, counsel to the Debtor, and counsel to any appointed official committee prior to exercising any enforcement rights or remedies in respect of the Collateral (other than the rights described in clauses (a) or (b) above (to the extent they might be deemed remedies in respect of the Collateral) and other than with respect to freezing any deposit accounts or securities accounts, provided, that such a freeze shall only be as to items drawn on such deposit accounts from and after the giving of such notice. In the event of any Termination Event which is not an Automatic Termination Event, the Secured Creditor shall be entitled to a hearing on three (3) business days' notice to seek relief in respect thereof. The rights and remedies of the Secured Creditor specified herein are cumulative and not exclusive of any rights or remedies that they may otherwise have.

21. A final hearing on the Debtors' continued use of Cash Collateral shall be conducted by the Court on _____, 2021, at __:_0_.m. (the "*Final Hearing*") and may be continued from time to time. The Debtors are directed to promptly serve notice of the Final Hearing by first

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL AND (B) SETTING A FINAL HEARING - 12

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

112023634.2 0070625-00003

Case 21-41340-BDL    Doc 21    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 41 of 46

1  class mail, postage prepaid, on all parties in interest within three (3) business days of the entry of

2  this Order, which shall constitute adequate and proper notice of the Final Hearing; and any party

3  in interest that objects to continued use of Cash Collateral prior to the Final Hearing shall file and

4  serve a written objection no later than _____, 2021, with the Debtors' reply to any such objection

5  due no later than _____, 2021.

6        22.    This Order shall be effective as of the date of entry by the Court.

7                /// End of Order ///

8  Presented by:

9  LEVENE, NEALE, BENDER,
   YOO & BRILL L.L.P.

10

11  */s/ David B. Golubchik* _____
   David B. Golubchik (Admitted *pro hac vice*)

12  John-Patrick M. Fritz (Admitted *pro hac vice*)

13  Proposed Attorneys for Debtors and Debtors-in
   Possession

14

15  STOEL RIVES LLP

16  */s/ Andrew Morton, for Bryan Glover (WSBA #49467)*
   Bryan T. Glover, WSBA No. 51045

17

18  Proposed Attorneys for Debtors and Debtors-in
   Possession

19

20  Stipulated to form by:

21  LANE POWELL PC

22

23  By */s/ James B. Zack* _____
     David W. Criswell, WSBA No. 33410

24       James B. Zack, WSBA No. 48122

25  Attorneys for RSS WFCM2015NXS4-OR SIB, LLC,
   Attorneys for RSS WFCM2016NXS5-OR SIW, LLC

26

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL AND (B) SETTING A FINAL HEARING - 13

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

112023634.2 0070625-00003

Case 21-41340-BDL   Doc 21   Filed 08/18/21   Ent. 08/18/21 18:03:50   Pg. 42 of 46

# Exhibit A

# Shilo Inn Bend, LLC
## PROFORMA OPERATING STATEMENT PREPARED ON CASH FLOW BASIS
### August 14, 2021 to October 31, 2021

| | First Four Weeks by Week (Aug 14 to Sept 10, 2021) | | | | | Sept 11-30 | October 2021 | Aug 14 to |
|---|---|---|---|---|---|---|---|---|
| | Week 1 Aug 14-20 | Week 2 Aug 21-27 | Week 3 Aug 28-Sep 3 | Week 4 Sep 4-10 | First 4 Weeks Total | 20-Day Period | Full Month | Oct 31, 2021 |
| AVAILABLE ROOMS | 1,050 | 1,050 | 1,050 | 1,050 | 4,200 | 3,000 | 4,650 | 11,850 |
| ROOMS SOLD | 590 | 595 | 615 | 650 | 2,450 | 2,540 | 1,960 | 6,950 |
| COMP ROOM NIGHTS | 4 | 4 | 4 | 4 | 16 | 16 | 16 | 48 |
| TOTAL ROOMS OCCUPIED | 594 | 599 | 619 | 654 | 2,466 | 2,556 | 1,976 | 6,998 |
| AVERAGE DAILY RATE | $121.00 | $122.50 | $125.00 | $130.00 | $124.76 | $117.00 | $117.50 | $119.88 |
| AVERAGE DAILY RATE (incl comps) | $120.19 | $121.69 | $124.00 | $129.20 | $123.95 | $116.28 | $116.55 | $119.06 |
| OCCUPANCY % (rooms sold) | 56.2% | 56.7% | 58.6% | 61.9% | 58.3% | 84.7% | 42.2% | 58.6% |
| OCCUPANCY % (incl comps) | 56.6% | 57.0% | 59.0% | 62.3% | 58.7% | 85.2% | 42.5% | 59.1% |
| REVENUE PER AVAILABLE ROOM | $67.99 | $69.42 | $73.22 | $80.48 | $72.78 | $99.07 | $49.53 | $70.31 |
| **DEPARTMENTAL REVENUE** | | | | | | | | |
| ROOMS | 71,390 | 72,890 | 76,880 | 84,500 | 305,660 | 297,200 | 230,300 | 833,160 |
| MISCELLANEOUS | 1,960 | 2,000 | 2,110 | 2,320 | 8,390 | 8,170 | 6,330 | 22,890 |
| OCCUPANCY TAX COLLECTIONS [2] | 6,780 | 6,920 | 7,300 | 8,030 | 29,030 | 28,230 | 21,880 | 79,140 |
| GROSS REVENUE and OTHER CASH RECEIPTS | 80,130 | 81,810 | 86,290 | 94,850 | 343,080 | 333,600 | 258,510 | 935,190 |
| **COST OF GOODS / SERVICES SOLD** | | | | | | | | |
| ROOMS [3] | 21,800 | 22,200 | 23,400 | 25,600 | 93,000 | 85,500 | 68,400 | 246,900 |
| MISCELLANEOUS | 690 | 700 | 740 | 810 | 2,940 | 2,860 | 2,220 | 8,020 |
| TOTAL COST OF GOODS / SERVICES SOLD | 22,490 | 22,900 | 24,140 | 26,410 | 95,940 | 88,360 | 70,620 | 254,920 |
| **DEPARTMENTAL PROFIT and OTHER CASH RECEIPTS** | | | | | | | | |
| ROOMS | 49,590 | 50,690 | 53,480 | 58,900 | 212,660 | 211,700 | 161,900 | 586,260 |
| MISCELLANEOUS | 1,270 | 1,300 | 1,370 | 1,510 | 5,450 | 5,310 | 4,110 | 14,870 |
| OCCUPANCY TAX CASH FLOW IN | 6,780 | 6,920 | 7,300 | 8,030 | 29,030 | 28,230 | 21,880 | 79,140 |
| GROSS PROFIT | 57,640 | 58,910 | 62,150 | 68,440 | 247,140 | 245,240 | 187,890 | 680,270 |
| **GEN & ADMIN EXPENSE AND OTHER CASH OUTFLOWS** | | | | | | | | |
| ADVERTISING & PROMOTION | 4,400 | 4,490 | 4,740 | 5,210 | 18,840 | 19,300 | 15,200 | 53,340 |
| PROPERTY MAINTENANCE | 10,420 | 10,610 | 11,120 | 12,100 | 44,250 | 39,200 | 30,600 | 114,050 |
| GENERAL & ADMINISTRATIVE | 14,090 | 14,360 | 15,070 | 16,440 | 59,960 | 54,400 | 42,400 | 156,760 |
| UTILITIES (Week 2 figure represents deposits) | 0 | 15,000 | 0 | 0 | 15,000 | 46,800 | 36,500 | 98,300 |
| INSURANCE | 0 | 0 | 8,209 | 0 | 8,209 | 0 | 8,209 | 16,418 |
| SECURED PROPERTY TAX | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| FRANCHISE FEES [4] | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SMC MANAGEMENT FEE [4] | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OCCUPANCY TAX [2] | 0 | 0 | 31,740 | 0 | 31,740 | 30,720 | 39,390 | 101,850 |
| TOTAL GENERAL & ADMINISTRATIVE EXPENSES AND OTHER CASH OUTFLOWS | 28,910 | 44,460 | 70,879 | 33,750 | 177,999 | 190,420 | 172,299 | 540,718 |
| NET CASH FLOW FROM OPERATIONS | 28,730 | 14,450 | (8,729) | 34,690 | 69,141 | 54,820 | 15,591 | 139,552 |
| Cash Beginning of Period | - | 28,730 | 43,180 | 34,451 | - | 69,141 | 123,961 | |
| Change in period | 28,730 | 14,450 | (8,729) | 34,690 | 69,141 | 54,820 | 15,591 | |
| Cash End of Period | 28,730 | 43,180 | 34,451 | 69,141 | 69,141 | 123,961 | 139,552 | |
| Trade Accounts Receivable Beginning of Period [5] | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| Trade Accounts Receivable End of Period | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | |
| Est. Inventory Beginning of Period [5] | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| Inventory End of Period | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | |
| FF&E (Est. FMV) Beginning of Period [5] | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| FF&E End of Period | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | |
| Real Property (FMV) Beginning of Period | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| Real Property (FMV) End of Period | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | |
| TOTAL ALL ASSETS - END OF PERIOD | 18,069,480 | 18,083,930 | 18,075,201 | 18,109,891 | 18,109,891 | 18,164,711 | 18,180,302 | |

Notes:

1) Payroll expense is included in Rooms, A&G, Sales, & Maintenance departments as appropriate.

2) Occupancy tax payments are estimated at 9.5% of revenue and payments are based on the prior month's receipts.

3) Rooms Department includes additional $1,250 per week / $5,000 per month of expenses for unplanned but necessary expenditures.

4) Affiliated company franchise and management fees are being deferred during the periods presented.

5) Estimated Balances as of 8/14/21.

6) Net change is assumed to be zero each period.

# Exhibit B

# Shilo Inn Warrenton, LLC
## PROFORMA OPERATING STATEMENT PREPARED ON CASH FLOW BASIS
### August 14, 2021 to October 31, 2021

| | First Four Weeks by Week (Aug 14 to Sept 10, 2021) | | | | | Sept 11-30 | October 2021 | Aug 14 to |
|---|---|---|---|---|---|---|---|---|
| | Week 1 Aug 14-20 | Week 2 Aug 21-27 | Week 3 Aug 28-Sep 3 | Week 4 Sep 4-10 | First 4 Weeks Total | 20-Day Period | Full Month | Oct 31, 2021 |
| AVAILABLE ROOMS | 441 | 441 | 441 | 441 | 1,764 | 1,260 | 1,953 | 4,977 |
| ROOMS SOLD | 225 | 250 | 260 | 300 | 1,035 | 1,180 | 1,250 | 3,465 |
| COMP ROOM NIGHTS | 4 | 4 | 4 | 4 | 16 | 16 | 16 | 48 |
| TOTAL ROOMS OCCUPIED | 229 | 254 | 264 | 304 | 1,051 | 1,196 | 1,266 | 3,513 |
| AVERAGE DAILY RATE | $121.00 | $122.50 | $125.00 | $130.00 | $124.99 | $125.00 | $120.00 | $123.19 |
| AVERAGE DAILY RATE (incl comps) | $118.91 | $120.59 | $123.11 | $128.29 | $123.08 | $123.33 | $118.48 | $121.51 |
| OCCUPANCY % (rooms sold) | 51.0% | 56.7% | 59.0% | 68.0% | 58.7% | 93.7% | 64.0% | 69.6% |
| OCCUPANCY % (incl comps) | 51.9% | 57.6% | 59.9% | 68.9% | 59.6% | 94.9% | 64.8% | 70.6% |
| REVENUE PER AVAILABLE ROOM | $61.75 | $69.46 | $73.70 | $88.44 | $73.33 | $117.06 | $76.80 | $85.77 |
| **DEPARTMENTAL REVENUE** | | | | | | | | |
| ROOMS | 27,230 | 30,630 | 32,500 | 39,000 | 129,360 | 147,500 | 150,000 | 426,860 |
| MISCELLANEOUS | 750 | 840 | 890 | 1,070 | 3,550 | 4,060 | 4,130 | 11,740 |
| OCCUPANCY TAX COLLECTIONS [2] | 3,270 | 3,680 | 3,900 | 4,680 | 15,530 | 17,700 | 18,000 | 51,230 |
| GROSS REVENUE and OTHER CASH RECEIPTS | 31,250 | 35,150 | 37,290 | 44,750 | 148,440 | 169,260 | 172,130 | 489,830 |
| **COST OF GOODS / SERVICES SOLD** | | | | | | | | |
| ROOMS [3] | 6,000 | 6,600 | 6,900 | 8,100 | 27,600 | 30,800 | 31,300 | 89,700 |
| MISCELLANEOUS | 260 | 290 | 310 | 370 | 1,230 | 1,420 | 1,450 | 4,100 |
| TOTAL COST OF GOODS / SERVICES SOLD | 6,260 | 6,890 | 7,210 | 8,470 | 28,830 | 32,220 | 32,750 | 93,800 |
| **DEPARTMENTAL PROFIT and OTHER CASH RECEIPTS** | | | | | | | | |
| ROOMS | 21,230 | 24,030 | 25,600 | 30,900 | 101,760 | 116,700 | 118,700 | 337,160 |
| MISCELLANEOUS | 490 | 550 | 580 | 700 | 2,320 | 2,640 | 2,680 | 7,640 |
| OCCUPANCY TAX CASH FLOW IN | 3,270 | 3,680 | 3,900 | 4,680 | 15,530 | 17,700 | 18,000 | 51,230 |
| GROSS PROFIT | 24,990 | 28,260 | 30,080 | 36,280 | 119,610 | 137,040 | 139,380 | 396,030 |
| **GEN & ADMIN EXPENSE AND OTHER CASH OUTFLOWS** | | | | | | | | |
| ADVERTISING & PROMOTION | 1,790 | 1,950 | 2,040 | 2,340 | 8,120 | 8,000 | 8,100 | 24,220 |
| PROPERTY MAINTENANCE | 4,440 | 4,840 | 5,060 | 5,820 | 20,160 | 22,300 | 22,600 | 65,060 |
| GENERAL & ADMINISTRATIVE | 4,920 | 5,370 | 5,620 | 6,500 | 22,410 | 24,900 | 25,200 | 72,510 |
| UTILITIES (Week 2 in figure represents deposits) | 0 | 10,000 | 0 | 0 | 10,000 | 13,000 | 13,200 | 36,200 |
| INSURANCE | 0 | 0 | 2,238 | 0 | 2,238 | 0 | 2,238 | 4,476 |
| SECURED PROPERTY TAX | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| FRANCHISE FEES [4] | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SMC MANAGEMENT FEE [4] | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OCCUPANCY TAX [2] | 0 | 0 | 18,010 | 0 | 18,010 | 18,360 | 24,050 | 60,420 |
| TOTAL GENERAL & ADMINISTRATIVE EXPENSES AND OTHER CASH OUTFLOWS | 11,150 | 22,160 | 32,968 | 14,660 | 80,938 | 86,560 | 95,388 | 262,886 |
| NET CASH FLOW FROM OPERATIONS | 13,840 | 6,100 | (2,888) | 21,620 | 38,672 | 50,480 | 43,992 | 133,144 |
| Cash Beginning of Period | - | 13,840 | 19,940 | 17,052 | - | 38,672 | 89,152 | |
| Change in period | 13,840 | 6,100 | (2,888) | 21,620 | 38,672 | 50,480 | 43,992 | |
| Cash End of Period | 13,840 | 19,940 | 17,052 | 38,672 | 38,672 | 89,152 | 133,144 | |
| Trade Accounts Receivable Beginning of Period [5] | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| Trade Accounts Receivable End of Period | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | |
| Est. Inventory Beginning of Period [5] | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| Inventory End of Period | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | |
| FF&E (Est. FMV) Beginning of Period [5] | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| FF&E End of Period | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | |
| Real Property (FMV) Beginning of Period [5] | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| Real Property (FMV) End of Period | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | |
| TOTAL ALL ASSETS - END OF PERIOD | 7,533,840 | 7,539,940 | 7,537,052 | 7,558,672 | 7,558,672 | 7,609,152 | 7,653,144 | |

**Notes:**

1) Payroll expense is included in Rooms, A&G, Sales, & Maintenance departments as appropriate.

2) Occupancy tax payments are estimated at 12.0% of revenue and payments are based on the prior month's receipts.

3) Rooms Department includes additional $1,250 per week / $5,000 per month of expenses for unplanned but necessary expenditures.

4) Affiliated company franchise and management fees are being deferred during the periods presented.

5) Estimated Balances as of 8/14/21.

6) Net change is assumed to be zero each period.