# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

In re:

SHILO INN, BEND, LLC, *et. al.*,[1]

Debtors and Debtors-in-Possession,

---

☒ Affects All Debtors

☐ Affects SHILO INN, BEND, LLC
☐ Affects SHILO INN, WARRENTON, LLC

Case No. 21-41340-BDL

**AGREED FIRST INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND SETTING A FINAL HEARING**

The Court, having read and considered the Ex Parte Emergency Motion for Entry of an Agreed First Interim Order Authorizing Debtor's Use of Cash Collateral and Setting a Final Hearing (the "***Motion***") [Doc. No. ___] filed by filed by Shilo Inn, Bend, LLC ("***Shilo Bend***") and Shilo Inn, Warrenton, LLC ("***Shilo Warrenton***") (each a "***Debtor***" and, collectively, the "***Debtors***") the debtors and debtors in possession in the above-captioned, proposed jointly-administered chapter 11 bankruptcy cases, and any responses thereto, and the pleadings and

---

[1] The Debtors are Shilo Inn, Bend, LLC, Bankruptcy Case No. 21-41340-BDL and Shilo Inn, Warrenton, LLC, Bankruptcy Case No. 21-41341-BDL. The cases are jointly administered.

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL AND (B) SETTING A FINAL HEARING - 1

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

103718748.1 0070625-00002
Case 21-41340-BDL    Doc 21-1    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 1 of 17

declarations submitted therewith, the Court hereby finds and concludes:

A. The Debtors filed voluntary petitions for relief under Chapter 11 on August 13, 2021 (the "***Petition Date***"). The Debtor has retained control over its assets and continues to operate its business pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

B. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

C. This is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2)(M), among other provisions, and the Court has the authority to enter this Order pursuant to 11 U.S.C. §§ 363 and 105, among other sections.

D. Notice of the ex parte Motion was sufficient under the circumstances.

E. The predecessor in interest of RSS WFCM2015NXS4-OR SIB, LLC, secured creditor as to the loan to Shilo Bend, and RSS WFCM2016NXS5-OR SIW, LLC, secured creditor as to the loan to Shilo Warrenton (each a "***Secured Creditor***" and, collectively, the "***Secured Creditor***") extended certain pre-petition credit facilities to Shilo Bend and Shilo Warrenton, respectively (collectively, the "***Credit Facilities***").

F. The Credit Facilities are evidenced, in part, by certain notes, security instruments, assignments of leases, UCC-1 statements, and any and all other pre-petition documents, agreements, and instruments evidencing, securing, or in any manner relating to the loans, which shall be collectively referred to as the "***Loan Documents***."

G. The Secured Creditor succeeded by assignment to all of the interests of the Original Lender in the Loan Documents; and as a result, the Secured Creditor is the current holder of the Notes and the Loan Documents.

H. The Debtors are in the process of reviewing and analyzing their respective obligations under the Loan Documents "(the *"**Prepetition Obligations**"*) and the validity, extent and priority of Secured Creditor's interests in and to the Debtors' assets (the "***Prepetition Collateral***").

I. The Debtors propose to use Cash Collateral pursuant to the terms set forth herein

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND (B) SETTING A FINAL HEARING - 2

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

103718748.1 0070625-00002
Case 21-41340-BDL    Doc 21-1    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 2 of 17

and the separate respective budgets attached hereto as Exhibit A (with respect to Shilo Bend) and Exhibit B (with respect to Shilo Warrenton) (each, as applicable, the "***Budget***"). The Debtors have requested that the Secured Creditor consent to the Debtor's use of its Cash Collateral, and the Secured Creditor has agreed to do so, but only on the terms set forth in this Interim Order.

J. The terms and conditions of this Order are fair and reasonable in connection with the Debtor's request to use Cash Collateral and provide adequate protection to the Secured Creditor and the entry of this Order is in the best interests of the Debtor's estate and its creditors.

Now, based upon the foregoing, it is hereby ORDERED:

1. The Motions are GRANTED on an interim limited basis pursuant to the terms and conditions of this Order.

2. <u>Use of Cash Collateral</u>. Subject to the terms of this Order, each Debtor is authorized to use cash collateral as defined in section 363(a) of the Bankruptcy Code ("***Cash Collateral***") to pay for the operating expenses and costs of administration incurred by the Debtor strictly in accordance with the Budget, for the period of time (the "***Interim Period***") from the date hereof until the earliest to occur of (a) the date that this Order ceases to be in full force and effect, or (b) the occurrence of a "***Termination Event***," as defined below. Notwithstanding the foregoing, the Debtor shall not be permitted to pay management fees to an "insider." The Debtor shall provide the Secured Creditor with copies of all other agreements to which it and any "insider" is a party in respect of which payments are provided for in the Budget. The Debtor's authority to use the Cash Collateral shall terminate (A) automatically upon the occurrence of a Termination Event as set forth below in paragraphs 3 (a), (b), (c), (d), (e), (f), (g), (h)(i), and (h)(ii) (all such Termination events being referred to as the "***Automatic Termination Events***"); or, (B) upon further order or relief from the Court upon the occurrence of any other Termination Event. Notwithstanding anything herein, on the occurrence of a Termination Event, all of the rights, remedies, benefits, and protections provided to the Secured Creditor under this Order shall survive such Termination Event.

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND (B) SETTING A FINAL HEARING - 3

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

103718748.1 0070625-00002
Case 21-41340-BDL    Doc 21-1    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 3 of 17

3. <u>Termination Event</u>.  A Termination Event shall constitute any of the following:

    a) September 30, 2021 (the ***"Outside Date"***);

    b) the Debtor shall fail to deposit on a daily basis all cash receipts and collections from whatever source in its post-petition debtor-in-possession account(s);

    c) any order shall be entered, other than with the consent of the Secured Creditor, reversing, amending, supplementing, staying, vacating, or otherwise modifying this Order in any material respect or terminating the use of Cash Collateral by the Debtor pursuant to this Order;

    d) an application shall be filed by the Debtor for the approval of any Superpriority Claim (as defined below) or any lien in the Chapter 11 Case (as defined below) which is *pari passu* with or senior to the Adequate Protection Obligations (as defined below) or Adequate Protection Liens (as defined below), or there shall be granted any such *pari passu* or senior Superpriority Claim or lien in each case, except any such Superpriority Claim or lien arising hereunder;

    e) any order shall be entered granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to the holder or holders of any security interest, lien or right of setoff other than a security interest, lien or right of setoff of the Secured Creditor, to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like), possession, set-off or any similar remedy with respect to any Collateral or any assets of the Debtor necessary to the conduct of its businesses;

    f) except as permitted by any order of this Court and included in the Budget, the Debtor shall make any payment in respect of a prepetition claim;

    g) (i) Shilo Bend's or Shilo Warrenton's chapter 11 case (each a ***"Chapter 11 Case"***) shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code; or (ii) a trustee under chapter 11 of the Bankruptcy Code, a responsible officer, or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in section

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND (B) SETTING A FINAL HEARING - 4

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

103718748.1 0070625-00002

Case 21-41340-BDL    Doc 21-1    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 4 of 17

1106(a)(3) and (4) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code shall be appointed or elected in a Chapter 11 Case;

    h)  except as would not reasonably be expected, individually or in the aggregate, to have a material adverse effect, the Debtor fails to keep and maintain all property in good working order and condition, ordinary wear and tear excepted;

    i)  the Debtor (i) fails to maintain, with financially sound and reputable insurance companies (x) insurance in such amounts and against such risks as are customarily maintained by companies of established repute engaged in the same or similar businesses operating in the same or similar locations and (y) all insurance required to be maintained pursuant to the Loan Documents, or (ii) fails to furnish to the Secured Creditor, upon reasonable request, information in reasonable detail as to the insurance so maintained;

    j)  the Debtor fails to comply with all laws, rules, regulations, and orders of any Governmental Authority applicable to it, its operations or its property, except where the failure to do so, individually or in the aggregate, would not reasonably be expected to result in a material adverse effect, *provided*, that the Debtor shall be entitled to contest in good faith any laws, rules, regulations and order of any Governmental Authority so long as, prior to contesting such matters, the Debtor notifies and obtains written consent of the Secured Creditor, which consent shall not be unreasonably withheld; or

    k)  other than as provided in subparagraphs (a) through (g) of this paragraph 3, the Debtor fails to comply with any of the terms or conditions of this Order; *provided, however*, that the Secured Creditor may waive, in writing, any Termination Event.

  4.  <u>Variances</u>.  The Debtor shall not exceed any line item on the Budget by an amount exceeding ten percent (10%) of each such line item; *provided*, *however*, that the Debtor may make expenditures up to ten percent (10%) in excess of the total budgeted expenses for that month in the Budget so long as actual disbursements do not exceed one hundred and ten percent (110%) of the budgeted total expenses for such month of the Budget (collectively, the "**Allowed Variance**").

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL AND (B) SETTING A FINAL HEARING - 5

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

103718748.1 0070625-00002

Case 21-41340-BDL Doc 21-1 Filed 08/18/21 Ent. 08/18/21 18:03:50 Pg. 5 of 17

To the extent that the Debtor's use of funds is lower than provided for in the budget on a given week during any period therein, the unused portion made be rolled over to the next weekly time period in the budget.

5. <u>Additional Approvals</u>. In the event that an expense arises which is not within any of the approved line items in the Budget, or the Debtor anticipates that any line item will need to be exceeded by more than the Allowed Variance, the Debtor shall request approval from the Secured Creditor, together with such back up and documentation as the Secured Creditor may reasonably request, and the Secured Creditor shall have three (3) business days after the provision of the request and the required back up and documentation within which to consent or object; *provided, however*, in the event that the Secured Creditor does not consent or if the requested expenditure presents an immediate threat to the business or property of the Debtor requiring action or remediation before the expiration of three (3) business days, the Debtor may seek an expedited response period from the Secured Creditor or the Debtor may file a motion with the Court seeking amendment of the Budget and approval of the additional expense; *provided, further, however*, to the extent possible, that prior to making any such application to the Court, the Debtor shall have requested the Secured Creditor make an expedited determination whether to approve the Debtor's proposed expenditure and provided the Secured Creditor with sufficient information and documentation to consider the Debtor's request for approval. The Debtor shall not incur such additional expense absent any such approval by the Secured Creditor or the Court.

6. <u>Professional Fees</u>. Notwithstanding anything to the contrary in this Order, no payments for the Debtor's professional fees (including but not limited to those for the Debtor's attorneys) are budgeted to be paid during the Interim Period, and such payments shall not in any event be made without prior notice, hearing, and approval of this Court.

7. <u>Reporting</u>. Within five (5) days after the last business day of each month commencing October 7, 2021 (each such date being referred to as a "***Reference Date***"), the Debtor shall provide the Secured Creditor with a comparison of its actual expenditures in the month then

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL AND (B) SETTING A FINAL HEARING - 6

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

103718748.1 0070625-00002
Case 21-41340-BDL    Doc 21-1    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 6 of 17

ending to the Budget, on a line-by-line basis, in a form reasonably acceptable to the Secured Creditor, consistent with the parties' prepetition practice.

8. <u>Adequate Protection</u>. The Secured Creditor is entitled, under section 363(e) of the Bankruptcy Code, to adequate protection of its interest in the Prepetition Collateral securing the Prepetition Obligations, including Cash Collateral, for and equal in amount to the amount of Cash Collateral used from and after the Petition Date, and, subject to a motion and hearing, the aggregate diminution in the value of the Secured Creditor's interests in the Prepetition Collateral from and after the Petition Date, if any, including any such diminution resulting from (a) the use of Cash Collateral, (b) the sale, lease, or use by the Debtors (or other decline in value) of the Prepetition Collateral, and (c) the imposition of the automatic stay under section 362 of the Bankruptcy Code (the aggregate amount of such diminution, which shall expressly include, among other things, the aggregate amount of the Cash Collateral used by the Debtors from and after the Petition Date (the "***Adequate Protection Obligations***")).[2] Although the Debtor contends that Secured Creditor is adequately protected by, among other things, substantial equity cushion, the Secured Creditor disputes such contention and contends that the Debtor cannot offer adequate protection for its use of Cash Collateral. The Secured Creditor has, however, consented to the Debtor's use of Cash Collateral, subject to and expressly conditioned upon the granting of protections as provided for in this Order.

9. <u>Intentionally Omitted</u>.

10. <u>Replacement Liens as Adequate Protection to the Secured Creditor</u>. Notwithstanding the provisions of section 552(a) of the Bankruptcy Code, and in addition to the security interests preserved by section 552(b) of the Bankruptcy Code, the Debtor grants, in favor of the Secured Creditor and as security for all indebtedness that is owed by the Debtor to the

---

[2] The capitalized terms "Adequate Protection Obligations" and "Adequate Protection Liens" are used in this Order for convenience only, and those terms or any other reference to adequate protection in this Order do not constitute a finding or otherwise imply that the protections and liens granted to the Secured Creditor constitute adequate protection under sections 361, 362, 363, or 364 of the Bankruptcy Code.

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND (B) SETTING A FINAL HEARING - 7

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

103718748.1 0070625-00002

Case 21-41340-BDL    Doc 21-1    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 7 of 17

Secured Creditor, under the Loan Documents, but only to the extent of the Adequate Protection Obligations, a first priority post-petition security interest and lien in, to and against all of the Debtor's assets, to the same priority, validity and extent that the Secured Creditor held a properly perfected pre-petition security interest in such assets, which are or have been acquired, generated or received by the Debtor subsequent to the Petition Date, as well as in all presently owned and hereafter acquired property which is not subject to a prior perfected and enforceable pre-petition lien or security interest, but excluding any claims or recoveries by or on behalf of the Debtor, its estate or any trustee appointed herein arising under sections 544 through 550, inclusive, of the Bankruptcy Code (collectively, the *"Postpetition Collateral*;" the Prepetition Collateral and the Postpetition Collateral are collectively referred to as the *"Collateral"*).

11. <u>Perfection</u>. The liens and security interests granted in this Order (the "***Adequate Protection Liens***") are deemed perfected without the necessity for filing or execution of documents which might otherwise be required under non-bankruptcy law for the perfection of said security interests. Notwithstanding, the Secured Creditor is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take any other action in order to validate and perfect the liens granted to it hereunder. The Debtor shall execute and deliver to the Secured Creditor all such agreements, financing statements, instruments, and other documents as the Secured Creditor may reasonably request to evidence, confirm, validate, or perfect the liens granted pursuant hereto (other than mortgages) and all such financing statements, control agreements, notices of liens, or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded at the time and on the date of the Petition Date. A certified copy of this Order may, in the discretion of the Secured Creditor, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments. Each and every federal, state, and local government agency or department may accept the entry by this Court of this Order as evidence of the validity, enforceability, and perfection on the Petition

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND (B) SETTING A FINAL HEARING - 8

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

103718748.1 0070625-00002
Case 21-41340-BDL    Doc 21-1    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 8 of 17

Date of the Adequate Protection Liens granted herein to or for the benefit of the Secured Creditor. The Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Collateral without the prior written consent of the Secured Creditor (and no such consent shall be implied from any other action, inaction, or acquiescence by the Secured Creditor) or an order of this Court.

12. <u>Inspection</u>. Upon reasonable notice and at such reasonable times during normal business hours and otherwise as may reasonably be requested so as not to interfere with the conduct of the Debtor's business, the Debtor shall permit any representatives designated by the Secured Creditor, to inspect, copy, and take extracts from their financial and accounting records and all records and files of the Debtor pertaining to the Collateral, and to discuss its affairs, finances, and accounts with its officers, financial advisors, and independent public accountants.

13. <u>Superpriority Claim</u>. The provisions of this Order are without prejudice to the Secured Creditor's right to seek the allowance of a superpriority administrative expense claim (the "***Superpriority Claim***") under section 507(b) of the Bankruptcy Code with respect to the Adequate Protection Obligations.

14. <u>No Surcharge</u>. During the term of this stipulated Order, no administrative expense claims, including fees and expenses of professionals, that are or have been incurred from the Petition Date through and including the date of any Termination Event shall be charged or assessed against or recovered from the Collateral or attributed to the Secured Creditor with respect to its interests in the Collateral pursuant to the provisions of section 506(c) of the Bankruptcy Code or otherwise by, through, or on behalf of the Debtor, without the prior written consent of the Secured Creditor, and no such consent shall be implied from any action, inaction, or acquiescence by, either with or without notice to, the Secured Creditor. Except as set forth herein, the Secured Creditor has not consented or agreed to the use of Cash Collateral subsequent to the Petition Date.

15. Notwithstanding the above or anything to the contrary in this Order, the Secured Creditor and the Debtor may each seek modification of the adequate protection provided in this

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND (B) SETTING A FINAL HEARING - 9

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

103718748.1 0070625-00002
Case 21-41340-BDL    Doc 21-1    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 9 of 17

Order, without prejudice to the rights of the other party hereto or any party in interest to contest any such modification.

16. <u>No Novation</u>. This Order shall not cause a novation of any of the Secured Creditor's secured documentation or Loan Documents.

17. <u>Creditor Not Deemed Owner or Operator</u>. Solely by agreeing to the use of cash collateral by the Debtor, the Secured Creditor shall not be deemed to have assumed any liability to any third person, and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor or of its assets.

18. <u>Non-Waiver of Rights and Remedies</u>.

    a. This Order is not intended to and shall not prejudice, alter, affect or waive any rights and/or remedies of the Secured Creditor (with respect to liens, claims, value determinations, and all other matters) under the Bankruptcy Code or applicable non-bankruptcy law (including, but not limited to, all matters pertaining to cash and other collateral).

    b. This Order and the Budget shall constitute valid and binding obligations of the Debtor and the Secured Creditor, enforceable against the Debtor and the Secured Creditor in accordance with its terms. No obligation, payment, transfer, or grant of security under this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable nonbankruptcy law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

    c. The failure or delay by the Secured Creditor to exercise its rights and remedies under this Order shall not constitute a waiver of any of the rights of the Secured Creditor hereunder or otherwise, and any single or partial exercise of such rights and remedies against any of the Debtors or the Collateral shall not be construed to limit any further exercise of such rights and remedies against any or all of the other Debtor and/or Collateral.

    d. Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND (B) SETTING A FINAL HEARING - 10

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

103718748.1 0070625-00002

Case 21-41340-BDL    Doc 21-1    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 10 of 17

impair (i) any of the rights of any of the Secured Creditor under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of the Secured Creditor to (A) request termination or modification of the automatic stay of section 362 of the Bankruptcy Code, (B) request dismissal or conversion to chapter 7 of a Chapter 11 Case, or appointment of a chapter 11 trustee or examiner (including with expanded powers), or (C) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans upon the expiration or termination of the Debtor's exclusive period, (ii) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Secured Creditor, (iii) the rights of the Debtor to oppose any requests made in accordance with clauses (i)(A), (B) and (C) above, (iv) upon a Termination Event, the right of the Debtor to request approval of this Court for use of Cash Collateral, subject to the right of the Secured Creditor to object and the need for the Debtor to obtain Court approval (and meet all applicable legal standards) prior to any further use of Cash Collateral after the Termination Event, and (v) any right of any party in interest to object to the terms and conditions of any subsequent request by the Debtor for use of Cash Collateral.

e. The provisions of this Order shall be binding upon and inure to the benefit of each of the Secured Creditor, the Debtor and their respective successors and assigns (including any estate representative, chapter 7 trustee, or other trustee or fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors).

19. <u>No Priming</u>. The Adequate Protection Liens shall not be (a) subject or junior to any lien that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code, or (b) subordinated to or made *pari passu* with any other lien, whether under section 364(d) of the Bankruptcy Code or otherwise. No lien having a priority superior to or *pari passu* with those granted by this Order with respect to the Adequate Protection Obligations shall be granted or allowed until the indefeasible payment in full in cash and satisfaction in the manner provided in this Order of the Adequate Protection Obligations, with the exception of prepetition or postpetition ad valorem taxes that may be owed to the Deschutes County, Oregon, or Clatsop

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND (B) SETTING A FINAL HEARING - 11

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

103718748.1 0070625-00002

Case 21-41340-BDL    Doc 21-1    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 11 of 17

County, Oregon, Tax Collector. No claim having a priority superior to or *pari passu* with the Superpriority Claims granted by this Order with respect to the Adequate Protection Obligations shall be granted or allowed until the indefeasible payment in full in cash and satisfaction in the manner provided in this Order of the Adequate Protection Obligations.

20. <u>Limited Relief from Automatic Stay</u>. The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the Secured Creditor to exercise, upon the occurrence and during the continuation of an Automatic Termination Event, all rights and remedies provided for hereunder, and to take any or all of the following actions without further order of or application to this Court: (a) terminate the Debtor's use of Cash Collateral; (b) declare all Adequate Protection Obligations to be immediately due and payable; and (c) take any other actions or exercise any other rights or remedies permitted under this Order or applicable law to effect the repayment and satisfaction of the Adequate Protection Obligations; provided, however, that the Secured Creditor shall provide five (5) business days written notice (by facsimile, telecopy, electronic mail, or otherwise) to the Office of the United States Trustee, counsel to the Debtor, and counsel to any appointed official committee prior to exercising any enforcement rights or remedies in respect of the Collateral (other than the rights described in clauses (a) or (b) above (to the extent they might be deemed remedies in respect of the Collateral) and other than with respect to freezing any deposit accounts or securities accounts, provided, that such a freeze shall only be as to items drawn on such deposit accounts from and after the giving of such notice. In the event of any Termination Event which is not an Automatic Termination Event, the Secured Creditor shall be entitled to a hearing on three (3) business days' notice to seek relief in respect thereof. The rights and remedies of the Secured Creditor specified herein are cumulative and not exclusive of any rights or remedies that they may otherwise have.

21. A final hearing on the Debtors' continued use of Cash Collateral shall be conducted by the Court on _____, 2021, at \_\_:\_0\_ .m. (the "***Final Hearing***") and may be continued from time to time. The Debtors are directed to promptly serve notice of the Final Hearing by first

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND (B) SETTING A FINAL HEARING - 12

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

112023634.2 0070625-00003

Case 21-41340-BDL    Doc 21-1    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 12 of 17

class mail, postage prepaid, on all parties in interest within three (3) business days of the entry of this Order, which shall constitute adequate and proper notice of the Final Hearing; and any party in interest that objects to continued use of Cash Collateral prior to the Final Hearing shall file and serve a written objection no later than _____, 2021, with the Debtors' reply to any such objection due no later than _____, 2021.

22. This Order shall be effective as of the date of entry by the Court.

/// End of Order ///

Presented by:

LEVENE, NEALE, BENDER,
YOO & BRILL L.L.P.


*/s/ David B. Golubchik*
David B. Golubchik (Admitted *pro hac vice*)
John-Patrick M. Fritz (Admitted *pro hac vice*)

Proposed Attorneys for Debtors and Debtors-in Possession

STOEL RIVES LLP


*/s/ Andrew Morton, for Bryan Glover (WSBA #49467)*
Bryan T. Glover, WSBA No. 51045

Proposed Attorneys for Debtors and Debtors-in Possession


Stipulated to form by:

LANE POWELL PC


By */s/ James B. Zack*
David W. Criswell, WSBA No. 33410
James B. Zack, WSBA No. 48122

Attorneys for RSS WFCM2015NXS4-OR SIB, LLC,
Attorneys for RSS WFCM2016NXS5-OR SIW, LLC

ORDER: (A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND (B) SETTING A FINAL HEARING - 13

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

112023634.2 0070625-00003

Case 21-41340-BDL    Doc 21-1    Filed 08/18/21    Ent. 08/18/21 18:03:50    Pg. 13 of 17

# Exhibit A

# Shilo Inn Bend, LLC
**PROFORMA OPERATING STATEMENT PREPARED ON CASH FLOW BASIS**
**August 14, 2021 to October 31, 2021**

|  | First Four Weeks by Week (Aug 14 to Sept 10, 2021) | | | | | Sept 11-30 | October 2021 | Aug 14 to Oct 31, 2021 |
|---|---|---|---|---|---|---|---|---|
|  | Week 1 Aug 14-20 | Week 2 Aug 21-27 | Week 3 Aug 28-Sep 3 | Week 4 Sep 4-10 | First 4 Weeks Total | 20-Day Period | Full Month | |
| **AVAILABLE ROOMS** | 1,050 | 1,050 | 1,050 | 1,050 | 4,200 | 3,000 | 4,650 | 11,850 |
| **ROOMS SOLD** | 590 | 595 | 615 | 650 | 2,450 | 2,540 | 1,960 | 6,950 |
| **COMP ROOM NIGHTS** | 4 | 4 | 4 | 4 | 16 | 16 | 16 | 48 |
| **TOTAL ROOMS OCCUPIED** | 594 | 599 | 619 | 654 | 2,466 | 2,556 | 1,976 | 6,998 |
| **AVERAGE DAILY RATE** | $121.00 | $122.50 | $125.00 | $130.00 | $124.76 | $117.00 | $117.50 | $119.88 |
| **AVERAGE DAILY RATE (incl comps)** | $120.19 | $121.69 | $124.19 | $129.20 | $123.95 | $116.28 | $116.55 | $119.06 |
| **OCCUPANCY % (rooms sold)** | 56.2% | 56.7% | 58.6% | 61.9% | 58.3% | 84.7% | 42.2% | 58.6% |
| **OCCUPANCY % (incl comps)** | 56.6% | 57.0% | 59.0% | 62.3% | 58.7% | 85.2% | 42.5% | 59.1% |
| **REVENUE PER AVAILABLE ROOM** | $67.99 | $69.42 | $73.22 | $80.48 | $72.78 | $99.07 | $49.53 | $70.31 |
| **DEPARTMENTAL REVENUE** | | | | | | | | |
| ROOMS | 71,390 | 72,890 | 76,880 | 84,500 | 305,660 | 297,200 | 230,300 | 833,160 |
| MISCELLANEOUS | 1,960 | 2,000 | 2,110 | 2,320 | 8,390 | 8,170 | 6,330 | 22,890 |
| OCCUPANCY TAX COLLECTIONS [2] | 6,780 | 6,920 | 7,300 | 8,030 | 29,030 | 28,230 | 21,880 | 79,140 |
| **GROSS REVENUE and OTHER CASH RECEIPTS** | 80,130 | 81,810 | 86,290 | 94,850 | 343,080 | 333,600 | 258,510 | 935,190 |
| **COST OF GOODS / SERVICES SOLD** | | | | | | | | |
| ROOMS [3] | 21,800 | 22,200 | 23,400 | 25,600 | 93,000 | 85,500 | 68,400 | 246,900 |
| MISCELLANEOUS | 690 | 700 | 740 | 810 | 2,940 | 2,860 | 2,220 | 8,020 |
| **TOTAL COST OF GOODS / SERVICES SOLD** | 22,490 | 22,900 | 24,140 | 26,410 | 95,940 | 88,360 | 70,620 | 254,920 |
| **DEPARTMENTAL PROFIT and OTHER CASH RECEIPTS** | | | | | | | | |
| ROOMS | 49,590 | 50,690 | 53,480 | 58,900 | 212,660 | 211,700 | 161,900 | 586,260 |
| MISCELLANEOUS | 1,270 | 1,300 | 1,370 | 1,510 | 5,450 | 5,310 | 4,110 | 14,870 |
| OCCUPANCY TAX CASH FLOW IN | 6,780 | 6,920 | 7,300 | 8,030 | 29,030 | 28,230 | 21,880 | 79,140 |
| **GROSS PROFIT** | 57,640 | 58,910 | 62,150 | 68,440 | 247,140 | 245,240 | 187,890 | 680,270 |
| **GEN & ADMIN EXPENSE AND OTHER CASH OUTFLOWS** | | | | | | | | |
| ADVERTISING & PROMOTION | 4,400 | 4,490 | 4,740 | 5,210 | 18,840 | 19,300 | 15,200 | 53,340 |
| PROPERTY MAINTENANCE | 10,420 | 10,610 | 11,120 | 12,100 | 44,250 | 39,200 | 30,600 | 114,050 |
| GENERAL & ADMINISTRATIVE | 14,090 | 14,360 | 15,070 | 16,440 | 59,960 | 54,400 | 42,400 | 156,760 |
| UTILITIES (Week 2 in figure represents deposits) | 0 | 15,000 | 0 | 0 | 15,000 | 46,800 | 36,500 | 98,300 |
| INSURANCE | 0 | 0 | 8,209 | 0 | 8,209 | 0 | 8,209 | 16,418 |
| SECURED PROPERTY TAX | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| FRANCHISE FEES [4] | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SMC MANAGEMENT FEE [4] | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OCCUPANCY TAX [2] | 0 | 0 | 31,740 | 0 | 31,740 | 30,720 | 39,390 | 101,850 |
| **TOTAL GENERAL & ADMINISTRATIVE EXPENSES AND OTHER CASH OUTFLOWS** | 28,910 | 44,460 | 70,879 | 33,750 | 177,999 | 190,420 | 172,299 | 540,718 |
| **NET CASH FLOW FROM OPERATIONS** | 28,730 | 14,450 | (8,729) | 34,690 | 69,141 | 54,820 | 15,591 | 139,552 |
| **Cash Beginning of Period** | - | 28,730 | 43,180 | 34,451 | - | 69,141 | 123,961 | |
| Change in period | 28,730 | 14,450 | (8,729) | 34,690 | 69,141 | 54,820 | 15,591 | |
| **Cash End of Period** | 28,730 | 43,180 | 34,451 | 69,141 | 69,141 | 123,961 | 139,552 | |
| **Trade Accounts Receivable Beginning of Period [5]** | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| **Trade Accounts Receivable End of Period** | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | |
| **Est. Inventory Beginning of Period [5]** | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| **Inventory End of Period** | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | |
| **FF&E (Est. FMV) Beginning of Period [5]** | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| **FF&E End of Period** | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | |
| **Real Property (FMV) Beginning of Period** | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| **Real Property (FMV) End of Period** | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | 17,500,000 | |
| **TOTAL ALL ASSETS - END OF PERIOD** | 18,069,480 | 18,083,930 | 18,075,201 | 18,109,891 | 18,109,891 | 18,164,711 | 18,180,302 | |

**Notes:**

1) Payroll expense is included in Rooms, A&G, Sales, & Maintenance departments as appropriate.
2) Occupancy tax payments are estimated at 9.5% of revenue and payments are based on the prior month's receipts.
3) Rooms Department includes additional $1,250 per week / $5,000 per month of expenses for unplanned but necessary expenditures.
4) Affiliated company franchise and management fees are being deferred during the periods presented.
5) Estimated Balances as of 8/14/21.
6) Net change is assumed to be zero each period.

# Exhibit B

# Shilo Inn Warrenton, LLC
**PROFORMA OPERATING STATEMENT PREPARED ON CASH FLOW BASIS**
August 14, 2021 to October 31, 2021

| | First Four Weeks by Week (Aug 14 to Sept 10, 2021) | | | | | Sept 11-30 | October 2021 | Aug 14 to |
|---|---|---|---|---|---|---|---|---|
| | Week 1 Aug 14-20 | Week 2 Aug 21-27 | Week 3 Aug 28-Sep 3 | Week 4 Sep 4-10 | First 4 Weeks Total | 20-Day Period | Full Month | Oct 31, 2021 |
| **AVAILABLE ROOMS** | 441 | 441 | 441 | 441 | 1,764 | 1,260 | 1,953 | 4,977 |
| **ROOMS SOLD** | 225 | 250 | 260 | 300 | 1,035 | 1,180 | 1,250 | 3,465 |
| **COMP ROOM NIGHTS** | 4 | 4 | 4 | 4 | 16 | 16 | 16 | 48 |
| **TOTAL ROOMS OCCUPIED** | 229 | 254 | 264 | 304 | 1,051 | 1,196 | 1,266 | 3,513 |
| **AVERAGE DAILY RATE** | $121.00 | $122.50 | $125.00 | $130.00 | $124.99 | $125.00 | $120.00 | $123.19 |
| **AVERAGE DAILY RATE (incl comps)** | $118.91 | $120.59 | $123.11 | $128.29 | $123.08 | $123.33 | $118.48 | $121.51 |
| **OCCUPANCY % (rooms sold)** | 51.0% | 56.7% | 59.0% | 68.0% | 58.7% | 93.7% | 64.0% | 69.6% |
| **OCCUPANCY % (incl comps)** | 51.9% | 57.6% | 59.9% | 68.9% | 59.6% | 94.9% | 64.8% | 70.6% |
| **REVENUE PER AVAILABLE ROOM** | $61.75 | $69.46 | $73.70 | $88.44 | $73.33 | $117.06 | $76.80 | $85.77 |
| **DEPARTMENTAL REVENUE** | | | | | | | | |
| ROOMS | 27,230 | 30,630 | 32,500 | 39,000 | 129,360 | 147,500 | 150,000 | 426,860 |
| MISCELLANEOUS | 750 | 840 | 890 | 1,070 | 3,550 | 4,060 | 4,130 | 11,740 |
| OCCUPANCY TAX COLLECTIONS [2] | 3,270 | 3,680 | 3,900 | 4,680 | 15,530 | 17,700 | 18,000 | 51,230 |
| **GROSS REVENUE and OTHER CASH RECEIPTS** | 31,250 | 35,150 | 37,290 | 44,750 | 148,440 | 169,260 | 172,130 | 489,830 |
| **COST OF GOODS / SERVICES SOLD** | | | | | | | | |
| ROOMS [3] | 6,000 | 6,600 | 6,900 | 8,100 | 27,600 | 30,800 | 31,300 | 89,700 |
| MISCELLANEOUS | 260 | 290 | 310 | 370 | 1,230 | 1,420 | 1,450 | 4,100 |
| **TOTAL COST OF GOODS / SERVICES SOLD** | 6,260 | 6,890 | 7,210 | 8,470 | 28,830 | 32,220 | 32,750 | 93,800 |
| **DEPARTMENTAL PROFIT and OTHER CASH RECEIPTS** | | | | | | | | |
| ROOMS | 21,230 | 24,030 | 25,600 | 30,900 | 101,760 | 116,700 | 118,700 | 337,160 |
| MISCELLANEOUS | 490 | 550 | 580 | 700 | 2,320 | 2,640 | 2,680 | 7,640 |
| OCCUPANCY TAX CASH FLOW IN | 3,270 | 3,680 | 3,900 | 4,680 | 15,530 | 17,700 | 18,000 | 51,230 |
| **GROSS PROFIT** | 24,990 | 28,260 | 30,080 | 36,280 | 119,610 | 137,040 | 139,380 | 396,030 |
| **GEN & ADMIN EXPENSE AND OTHER CASH OUTFLOWS** | | | | | | | | |
| ADVERTISING & PROMOTION | 1,790 | 1,950 | 2,040 | 2,340 | 8,120 | 8,000 | 8,100 | 24,220 |
| PROPERTY MAINTENANCE | 4,440 | 4,840 | 5,060 | 5,820 | 20,160 | 22,300 | 22,600 | 65,060 |
| GENERAL & ADMINISTRATIVE | 4,920 | 5,370 | 5,620 | 6,500 | 22,410 | 24,900 | 25,200 | 72,510 |
| UTILITIES (Week 2 in figure represents deposits) | 0 | 10,000 | 0 | 0 | 10,000 | 13,000 | 13,200 | 36,200 |
| INSURANCE | 0 | 0 | 2,238 | 0 | 2,238 | 0 | 2,238 | 4,476 |
| SECURED PROPERTY TAX | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| FRANCHISE FEES [4] | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SMC MANAGEMENT FEE [4] | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| OCCUPANCY TAX [2] | 0 | 0 | 18,010 | 0 | 18,010 | 18,360 | 24,050 | 60,420 |
| **TOTAL GENERAL & ADMINISTRATIVE EXPENSES AND OTHER CASH OUTFLOWS** | 11,150 | 22,160 | 32,968 | 14,660 | 80,938 | 86,560 | 95,388 | 262,886 |
| **NET CASH FLOW FROM OPERATIONS** | 13,840 | 6,100 | (2,888) | 21,620 | 38,672 | 50,480 | 43,992 | 133,144 |
| **Cash Beginning of Period** | - | 13,840 | 19,940 | 17,052 | - | 38,672 | 89,152 | |
| Change in period | 13,840 | 6,100 | (2,888) | 21,620 | 38,672 | 50,480 | 43,992 | |
| **Cash End of Period** | 13,840 | 19,940 | 17,052 | 38,672 | 38,672 | 89,152 | 133,144 | |
| **Trade Accounts Receivable Beginning of Period [5]** | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| **Trade Accounts Receivable End of Period** | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | |
| **Est. Inventory Beginning of Period [5]** | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| **Inventory End of Period** | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | |
| **FF&E (Est. FMV) Beginning of Period [5]** | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| **FF&E End of Period** | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | |
| **Real Property (FMV) Beginning of Period [5]** | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | |
| Change in period [6] | - | - | - | - | - | - | - | |
| **Real Property (FMV) End of Period** | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | 7,200,000 | |
| **TOTAL ALL ASSETS - END OF PERIOD** | 7,533,840 | 7,539,940 | 7,537,052 | 7,558,672 | 7,558,672 | 7,609,152 | 7,653,144 | |

**Notes:**

1) Payroll expense is included in Rooms, A&G, Sales, & Maintenance departments as appropriate.
2) Occupancy tax payments are estimated at 12.0% of revenue and payments are based on the prior month's receipts.
3) Rooms Department includes additional $1,250 per week / $5,000 per month of expenses for unplanned but necessary expenditures.
4) Affiliated company franchise and management fees are being deferred during the periods presented.
5) Estimated Balances as of 8/14/21.
6) Net change is assumed to be zero each period.